Argued and submitted October 3, 2007, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings July 3, 2008

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CESAR RODRIGUEZ-CASTILLO,
*Petitioner on Review.*

(CC 030872; CA A122360; SC S054607)

188 P3d 268

Ernest G. Lannet, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. Jamesa J. Drake, Deputy Public Defender, filed the petition for review. With them on the petition for review and the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services, Legal Services Division.

Kaye Ellen McDonald, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

** Linder, J., did not participate in the consideration or decision of this case.

KISTLER, J.

.

## KISTLER, J.

The primary question this case presents is whether a translated statement is hearsay and, if it is, whether the statement comes within an exception to the hearsay rule. The trial court ruled that the victim's translated statements were admissible under an exception for reports of sexual abuse, and the jury convicted defendant of one count of sexual abuse and acquitted him on the remaining 10 counts. A divided en banc Court of Appeals affirmed. *State v. Rodriguez-Castillo*, 210 Or App 479, 151 P3d 931 (2007). The lead opinion in the Court of Appeals reasoned that the statements were not admissible under the hearsay exception on which the trial court had relied. *Id.* at 489. It concluded, however, that the statements were admissible under OEC 803(28), the residual exception to the hearsay rule. *Id.* at 496. We allowed defendant's petition for review and now reverse the Court of Appeals decision.

Defendant and his wife lived with their three daughters and their niece in Lincoln County. In June, defendant's uncle, his two sons, and his 13-year-old daughter (the victim) moved into defendant's home. For several weeks, the two families shared the same home. Defendant and his family then moved to California for the summer and returned in October. When defendant and his family returned, the victim began to act differently. The victim reported to a friend, family, and the police that defendant had touched her inappropriately. The specificity and the details of the victim's reports of abuse varied, however. The most detailed and complete report of the abuse occurred during the victim's second interview with a detective. Because that interview also gave rise to the evidentiary issue that divided the Court of Appeals, we first set out what the victim reported during that interview. We then describe the charges that resulted from the victim's reports of abuse and the evidentiary ruling that gave rise to the Court of Appeals decision.

The victim primarily speaks Spanish. The detective who interviewed her speaks only English. To allow the two of them to communicate, a bilingual middle-school tutor, Pedro Perez, served as an interpreter during the second interview. During that interview, the victim described, through Perez,

three incidents of abuse to the detective. The victim reported that the first incident occurred one night while defendant's wife was sleeping in one bedroom with their children, the victim's father and her younger brother were sleeping in the other bedroom, and the victim's older brother was sleeping on the couch in the living room. The victim and defendant were also in the living room watching television. She was on another couch and defendant was on the floor. She said that "defendant touched [her] chest, he touched [her] down below, both places, with his hand." When asked if he touched her "on the outside of her body or the inside of her body," she said, "On the inside." Defendant then "grabbed her around the waist, and wanted her to stand up, and he pulled her by the hand and dragged her into the kitchen" where he exposed his genitals and tried to get the victim to touch them.

The victim also reported to the detective, through Perez, that the second and third incidents occurred one day when defendant's wife took their children and went to a motel. She said that the second incident occurred in the afternoon. Defendant, the victim, her brothers, and a cousin were the only ones at home. All of them "started kind of goofing off and messing around and locking each other out of the house." When the older brother locked defendant and the victim out, defendant grabbed the victim around the waist and would not let go. Eventually she got away and got back in the house. At that point, the cousin left, and the victim's older brother began taking a shower before going to work. While her older brother was taking a shower, the victim went in the bedroom. Defendant followed her. He grabbed her, pushed her onto the bed, and touched her chest.

The victim reported that the third incident occurred later that same night, while the defendant's wife and children were at the motel. The victim and her younger brother were home alone. Defendant, the victim's older brother, and her father were at work. Defendant came home from work early and sat beside the victim on the couch. He started stroking her hair. She tried to get up, but defendant grabbed her hand and said, " 'Don't leave.' " He touched her chest and then touched her "[d]own below. She said that [defendant] touched her that night down below under her pants with his hand."

The state charged defendant with one count of first-degree sexual penetration, one count of second-degree sexual penetration, one count of private indecency, and eight counts of first-degree sexual abuse.[1] At trial, the state called the detective to tell the jury the statements, set out above, that the victim had made to him through Perez. Shortly after the detective began recounting what the victim had said during the second interview, defendant's counsel objected on the ground that the detective's testimony was double hearsay; that is, the detective was telling the jury what Perez told him the victim had said, and the evidence was being offered for the truth of the matter asserted—to prove that defendant sexually abused the victim. Defendant acknowledged that the victim's out-of-court statements were admissible under an exception to the hearsay rule for reports of abuse. *See* OEC 803(18a)(b) (authorizing the admission of some out-of-court statements regarding abuse if the declarant is available for cross-examination). He contended, however, that Perez's repetition of those statements to the detective added another layer of hearsay that did not come within any exception to the hearsay rule.

The state responded that the premise of defendant's argument was wrong; in the state's view, Perez's repetition of the victim's statements to the detective did not add another layer of hearsay. The state did not argue that, if Perez's statements added another layer of hearsay, those statements were admissible under an exception to the rule against hearsay.[2] Specifically, the state did not argue (and the trial court did not decide) whether the detective's repetition of Perez's out-of-court statements was admissible under the residual

---

[1] The indictment specified that four counts of first-degree sexual abuse related to touching the victim's breasts and that the remaining four counts of first-degree sexual abuse related to touching her vagina. The eight counts of first-degree sexual abuse were paired based on alternative means for charging first-degree sexual abuse; for example, count three alleged that defendant committed first-degree sexual abuse because he touched the victim's vagina by means of forcible compulsion, and count four alleged that he committed first-degree sexual abuse because he touched her vagina when she was under 14 years of age. The other six counts of first-degree sexual abuse were paired in the same way.

[2] Defendant had raised the same issue earlier during the detective's testimony, and our summary of the state's arguments comes from both that discussion and the discussion surrounding the admission of the victim's statements.

exception to the hearsay rule. *See* OEC 803(28) (setting out criteria necessary to come within that exception).

After considering the parties' arguments, the trial court overruled defendant's objection, apparently on the ground that both the victim's out-of-court statements and Perez's out-of-court statements were admissible under OEC 803(18a)(b) as reports of abuse. The detective then repeated the victim's statements to the jury, and the state introduced additional evidence to prove defendant's guilt.

In instructing the jury at the end of the trial, the court did not tell the jury which of the 11 counts corresponded to which of the three incidents. The trial court submitted separate verdict forms for each count; each form provided a space for the jury to record its verdict on that count and also contained signature lines for each juror who had voted for that verdict. Consistently with the indictment, the verdict forms for the eight counts of first-degree sexual abuse indicated the body part (vagina or breasts) that defendant allegedly had touched and the basis for elevating the charge to first-degree sexual abuse (the victim's age or forcible compulsion). The verdict forms did not otherwise distinguish among the three incidents, however.[3] After considering the evidence, the jury convicted defendant of count seven of the indictment. It found him guilty of first-degree sexual abuse for touching the victim's vagina when she was under 14 years of age. The jury acquitted defendant of the remaining counts.

On appeal, a divided en banc Court of Appeals upheld the trial court's evidentiary ruling but on a different ground. The lead opinion assumed that Perez's repetition of the victim's statements to the detective added another layer of hearsay, and it concluded that Perez's statements were not admissible under OEC 803(18a)(b), as the trial court appears

---

[3] The two counts of penetration and the one count of private indecency presumably related to the first incident. There was evidence that, during that incident, defendant had touched the inside of the victim's vagina and then exposed himself to her. The difficulty lies in determining from the trial court's instructions and jury verdict forms which of the eight counts of first-degree sexual abuse related to which of the three incidents.

to have ruled. *Rodriguez-Castillo*, 210 Or App at 489. However, a majority of the court concluded that Perez's statements were admissible under the residual exception to the hearsay rule, OEC 803(28)—an exception that neither the state had argued before the trial court nor that the trial court had considered. *See id.* at 496 (lead opinion) (upholding the trial court's evidentiary ruling on that ground); *id.* at 513 (Edmonds, J., concurring).[4] We allowed defendant's petition for review to consider the evidentiary issue that divided the Court of Appeals.

The detective's testimony reduces to the following paradigm: During the detective's interview with the victim, the victim told Perez that defendant had sexually abused her. Perez then translated and repeated those statements to the detective, who ultimately repeated them to the jury for the truth of the matter asserted; that is, the state offered the detective's testimony to prove that defendant had sexually abused the victim on three separate occasions. In any other context, the detective's testimony would be double hearsay. *See State v. Derryberry*, 270 Or 482, 488, 528 P2d 1034 (1974) ("[t]he testimony of the police officers that they heard [defendant's friend] say that he heard the defendant say that he stole the furniture was 'double hearsay'"); Christopher B. Mueller and Laird C. Kirkpatrick, 5 *Federal Evidence* § 8:136 at 244 (3d ed 2007) (describing layered or double hearsay). Mueller and Kirkpatrick provide the following "fairly common" example of double hearsay in their treatise on evidence:

"[A]ssume that M learns from L that K said that the light was green. If M testifies about L's statement describing what K said and the purpose is to prove that the light was

---

[4] Four judges reasoned that Perez's statements were admissible under OEC 803(28), the residual exception to the hearsay rule. *Rodriguez-Castillo*, 210 Or App at 496 (lead opinion). One judge agreed with the lead opinion's reasoning on that issue but did not join its opinion because he would have analyzed a separate issue differently. *Id.* at 513 (Edmonds, J., concurring). Three judges disagreed with the lead opinion's reasoning on the evidentiary issue but did not reach the question whether any error was harmless because those judges would have reversed on a different issue. *Id.* at 528 and n 11 (Brewer, C. J., dissenting). One judge disagreed with the lead opinion's reasoning on the evidentiary issue and would have held that the erroneously admitted evidence was not harmless. *Id.* at 530-31 (Wollheim, J., dissenting).

green, then M's testimony involves layered (double) hearsay."

5 *Federal Evidence* § 8:136 at 244. To paraphrase that example, the detective's testimony was double hearsay because the detective testified about Perez's statement describing what the victim said and did so to prove the truth of the matter asserted—that defendant had sexually abused the victim.

Under OEC 805, the detective's testimony was admissible only if the state could show that each out-of-court statement either came within an exception to the hearsay rule or did not constitute hearsay. *See* OEC 805 (stating that rule); *Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 388-89, 856 P2d 625 (1993) (same). The parties agree that, although the victim's out-of-court statements were hearsay, they were admissible under the exception for reports of abuse set out in OEC 803(18a)(b).[5] The parties disagree whether Perez's repetition of the victim's statements to the detective adds another layer of hearsay and, if it does, whether his repetition of her statements comes within an exception to the hearsay rule.

■ The state contends initially that Perez's statements are not hearsay either because Perez was merely a "language conduit" between the victim and the detective or because Perez was the victim's agent. The state argues alternatively that, if Perez's statements constitute a second layer of hearsay, then the Court of Appeals correctly concluded that his statements came within the residual exception to the hearsay rule. We begin with the state's argument that Perez's repetition of the victim's statements to the detective did not constitute hearsay because Perez served as a "language conduit" between the victim and the detective.

In making that argument, the state notes that OEC 801(3) defines hearsay as an out-of-court "statement * * * offered in evidence to prove the truth of the matter asserted." It then notes that OEC 801(1)(a) defines a statement as "[a]n oral or written assertion." The state reasons that, in translating a person's statements from one language

---

[5] Because Perez could not remember what the victim had said, he was unable to testify regarding her statements to him.

to another, an interpreter is not asserting anything. Rather, an interpreter is merely converting a speaker's statements to another language and conveying the converted statements to another person. The state concludes that, because Perez's statements were not assertions, they were not hearsay.

The premise of the state's argument—that, in converting the victim's statements from Spanish to English and repeating them to the detective, Perez was not making an independent assertion—is difficult to square with both the detective's testimony and established case law. When the detective told the jury that the victim said that defendant had assaulted her, he based his testimony on two separate statements: (1) the victim's statement to Perez that defendant had assaulted her and (2) Perez's statement to the detective that the victim had said that defendant had assaulted her. Each statement asserts a related but separate proposition. The first statement asserts what defendant did. The second statement asserts that the victim said that he did it. The second statement in this case asserts no more and no less than the second statement asserted in the "fairly common" example of double hearsay from Mueller and Kirkpatrick that we quoted above. *See* Mueller and Kirkpatrick, 5 *Federal Evidence* § 8:136 at 244 (describing a "fairly common" example of double hearsay).

In many cases, a second person may seek only to repeat what another person said and thus may intend to serve only as a conduit, but it does not follow that the second person's repetition of the first person's statement does not add another layer of hearsay. In *Hickey v. Settlemier*, 318 Or 196, 199, 864 P2d 372 (1993), for instance, a reporter for a television news program repeated the defendant's words during a broadcast. The plaintiff sought to introduce a videotape of the broadcast at trial, and this court held that the reporter's out-of-court statement repeating the defendant's words was inadmissible hearsay. *Id.* at 204-06. That was true even though the reporter was merely repeating what the defendant had said, much as Perez did in this case.[6]

---

[6] The state appears to rely on the fact that Perez was translating the victim's statement to argue that Perez's out-of-court statement is not hearsay. As we understand the state's argument, it contends that Perez's role as an interpreter made his out-of-court statements trustworthy. The fact, however, that an

■   The state argues alternatively that Perez's statements were not hearsay because Perez was the victim's agent. That argument rests on the premise that, when Perez was translating the victim's statements, he was acting as her agent. The state then reasons that, because Perez was the victim's agent, Perez's statements are admissible as if they were the victim's statements.

Even if we assume that Perez was acting as the victim's agent, the Oregon Evidence Code recognizes a more limited agency exception to the rule against hearsay than the state advocates. OEC 801(4) excepts from the definition of hearsay certain out-of-court statements that otherwise would come within that definition. Specifically, OEC 801(4)(b)(A) provides that a party's out-of-court statement is not hearsay if it is offered against the party. As a corollary to that rule, the evidence code provides that "[a] statement by the party's agent * * * concerning a matter within the scope of the agency * * * [and] made during the existence of the relationship" is also not hearsay when it is offered against the party. OEC 801(4)(b)(D). The rules of evidence recognize an "agency exception" only for statements that a *party's* agent makes and then only when the statement is introduced against the party. The victim is not a party in this case, and her statements were not introduced against her. We may not expand the specific exception for statements that a party's agent makes to include statements that anyone's agent makes. *See US West Communications v. City of Eugene*, 336 Or 181, 188, 81 P3d 702 (2003) (explaining that courts may not rewrite statutes to insert what the legislature has omitted).

The victim's statements that defendant had abused her would have been admissible under OEC 803(18a)(b) if she had made them to the detective and he had been able to testify to them without Perez's intervention. That did not happen, however. Instead, the victim told Perez what happened, and Perez told the detective. Perez's statements to the detective added another layer of hearsay but not the kind of

out-of-court statement may be trustworthy does not mean that it is not hearsay. Rather, the premise of most hearsay exceptions is that a category of statements, although hearsay, is sufficiently trustworthy to be admissible without the ability to cross-examine the declarant.

hearsay that is admissible under OEC 803(18a)(b). Accordingly, the detective's testimony was admissible only if Perez's out-of-court statements came within some other exception to the rule against hearsay.

██ ██    On that issue, the state relies on only one hearsay exception. It argues that the Court of Appeals correctly held that the statements were admissible under the residual exception in OEC 803(28), which provides:

"The following are not excluded by [the rule against hearsay], even though the declarant is available as a witness:

"* * * * *

"(28)(a)   A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

"(A)   The statement is relevant;

"(B)   The statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; and

"(C)   The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence.

"(b)   A statement may not be admitted under this subsection unless the proponent of it makes known to the adverse party the intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing, or as soon as practicable after it becomes apparent that such statement is probative of the issues at hand, to provide the adverse party with a fair opportunity to prepare to meet it."

OEC 803(28) directs trial courts to determine in the first instance whether (1) the statement has equivalent circumstantial guarantees of trustworthiness as other hearsay exceptions; (2) the statement is relevant; (3) the statement is more probative than any other evidence that is reasonably available; and (4) the general purposes of the evidence code and the interests of justice would be served. Although relevance presents a legal issue, the determination whether

other evidence is reasonably available and whether the statement contains circumstantial guarantees of trustworthiness may require factual inquiries, as discussed below. And the determination whether admitting the evidence in a particular case would best serve the ends of justice is the sort of discretionary decision that customarily has been entrusted to trial courts in the first instance.

Given those considerations, other courts that have considered this issue have held that the question whether evidence should be admitted under the residual exception ordinarily may not be raised for the first time on appeal. As Mueller and Kirkpatrick explain,

"Because of the notice requirement, and because it is peculiarly important in the case of the [residual] exceptions that the judge consider the evidence and apply the exception in the first instance, resort to this provision for the first time on appeal as the basis for challenging or supporting rulings below is inappropriate."

5 *Federal Evidence* § 8:140 at 272 (summarizing federal decisions interpreting the federal counterpart to OEC 803(28)) (footnote omitted).

We think that admonition applies equally in this case. The state never argued before the trial court that Perez's repetition of the victim's statements was admissible under OEC 803(28); as a result, defendant did not have an opportunity to offer evidence on the various criteria that OEC 803(28) directs trial courts to determine, and the trial court never considered whether the state's evidence satisfied those criteria for admission. Not surprisingly, when the Court of Appeals considered, for the first time on appeal, whether the translated statements were admissible under OEC 803(28), the lead and the dissenting opinions differed over the first criterion—whether those statements had sufficient "guarantees of trustworthiness." *See* OEC 803(28) (stating that criterion).

The lead opinion concluded that the statements were trustworthy based on evidence that it gleaned from various parts of the trial record. It noted that Perez explained that he spoke Spanish "quite well," that Perez works as a

bilingual middle- school tutor, and that the victim's trial testimony was consistent with the detective's recitation of her out-of-court, translated statements. 210 Or App at 494. The dissenting opinions reasoned that the ability to speak a second language is quite different from the ability to serve as an interpreter, that there was no evidence that Perez was a qualified interpreter, nor was there any evidence that he had employed one of two accepted methods of interpretation. *Id.* at 528-30 (Brewer, C. J., dissenting). Rather, as the dissenting opinions reasoned, "[i]t is possible that [Perez] summarized or paraphrased the victim's statements instead. When asked whether he had accurately translated the conversation, Perez responded only, 'I think so. I think it's—yeah, as far as I—as far as I know.' " *Id.* at 530.

We need not decide whether the lead or the dissenting opinions have the better of the argument in order to resolve this case. Because the state did not argue before the trial court that it was relying on OEC 803(28) as the basis for admitting the detective's statements, neither defendant nor the state presented any evidence on the criteria set out in that rule. Moreover, the trial court did not have an opportunity to rule on the criteria that OEC 803(28) directs it to consider. It follows that we are not in a position to rule as a matter of law that the detective's statements were admissible under OEC 803(28).[7] *See Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001) (appellate courts may not rely on an alternate ground for upholding a trial court's ruling when the record either is not adequate or would have been developed differently if the alternate ground had been raised at trial). Accordingly, we hold that, in this procedural posture, the state may not rely on the residual exception to uphold the trial court's ruling.

---

[7] There are other issues regarding whether the state may rely on the residual exception. One issue is whether, because the victim was available to testify, the detective's recitation of the victim's out-of-court statements were "more probative on the point for which [they were] offered [*i.e.,* to prove that defendant sexually assaulted the victim] than any other evidence that the proponent can procure through reasonable efforts." *See* OEC 803(28)(a)(B) (stating that requirement); Laird C. Kirkpatrick, *Oregon Evidence* § 803.28[3][c] at 813 (2007) (explaining that, "[a]rguably, this rule also contains an unavailability requirement as a practical matter, because a showing must be made that the hearsay statement is more probative on the point for [which] it is offered than any other evidence which the proponent can procure through reasonable efforts").

■ ■    The remaining question is whether erroneously admitting the detective's testimony was harmless—*i.e.*, whether there was "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (stating standard). As the court explained in *Davis*, the correct focus of that inquiry "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Id.* In determining the possible influence of the error on the verdict, the court has considered the nature of the erroneously admitted evidence in the context of other evidence on the same issue. *See State v. Gibson*, 338 Or 560, 576-77, 113 P3d 423 (2005) (pursuing that inquiry). It has asked whether the jury would have regarded the evidence as duplicative, cumulative, or unhelpful in its deliberations. *Davis*, 336 Or at 33-34.

The state identifies four bases for saying that the detective's testimony was merely duplicative or cumulative of other evidence in the record. First, it notes that the victim reported the abuse to a friend, her family, and her teachers. She told those people that defendant had touched her inappropriately.[8] Her reports were no more specific than that, however. She did not say where, when, or how often defendant had touched her. By contrast, the victim gave the detective a detailed narrative of three incidents of sexual abuse, which we have set out above. Those statements went far beyond her nonspecific reports of abuse to her friend, family, and teachers.

Second, the state notes that the victim testified to all three incidents at trial. The victim's trial testimony, however, is not as complete as her out-of-court statements to the detective. For example, regarding the third incident (which allegedly occurred the night that defendant's wife was away and defendant came home from work early), the victim responded "yes" when the prosecutor asked if "anything happen[ed] that night." When asked what happened, the victim said, "Well, I

---

[8] Initially, the victim told her friend and family that defendant had raped her. However, when her family explained what rape means, the victim corrected her report and said only that defendant had touched her inappropriately.

don't know, and I can't lie because I don't know what happened." The prosecutor reminded the victim that she had just said that something had happened and asked her why she had said that. The victim responded, "He touched me—because he touched me, but I don't know where."

The trial court took a break. When the trial resumed, the victim returned to the stand and responded briefly to a series of specific questions. She said that defendant sat next to her and touched her. When asked where he touched her, she did not answer. The prosecutor then handed her a diagram of a young girl. The victim indicated on the diagram that defendant had touched her vagina and, when asked, said that he had touched her on top of her clothes. The victim's trial testimony can only be described as sparse and halting in comparison to her statements to the detective. We cannot say that, in light of her testimony at trial, her statements to the detective were merely duplicative or cumulative.[9]

Third, the state notes that a social worker who interviewed the victim told the jury what the victim said to her during their conversation. As the state candidly acknowledges, however, the victim's statements during that interview "were rather confused." Her statements go back and forth between the second and third incidents without distinguishing between them. She does not appear to refer to any touching during the first incident, although she acknowledged in response to leading questions from the social worker that defendant had exposed himself to her, presumably during the first incident. Again, we cannot say that the victim's statements to the detective were merely cumulative. Rather, the victim's statements to the detective provided the most complete, detailed narrative of the three incidents that the jury heard.

Finally, the state called an officer who speaks Spanish, who had interviewed defendant without the aid of

---

[9] As noted above, defendant objected to the detective's testimony regarding his second interview with the victim. He did not object to the detective's testimony regarding his first interview with the victim. That interview was more sparse and halting than the victim's trial testimony. Accordingly, it does not provide a basis for saying that the ruling admitting the testimony to which defendant did object was harmless.

an interpreter, and who had videotaped the interview. When the officer started to translate the videotape for the jury, the trial court stopped him from doing so because, as the trial court explained outside the presence of the jury, the officer's Spanish was "very poor."[10] The officer explained that he had difficulty with simultaneous translation. The state accordingly selected a few specific statements and asked the officer to translate those statements. Essentially, the officer testified that defendant denied, then admitted, and then denied that, on one occasion, he had put his hand inside the victim's pants and touched either the top of her pubic hair or the outside of her vagina.

Defendant also testified. He said that he had not touched the victim's breasts or vagina. He testified, however, that one night, when his wife, the victim's father, and her older brother were home, he was watching television. He said that the victim came in, lay down beside him, took his hand and put it on her stomach. Then, she pushed his hand down her pants. He explained that his hand may have touched the top of her pubic hair but that he had not touched her vagina. Defendant testified that he tried to explain what had happened to the officer, but the officer did not speak Spanish "very well; 50, 60 percent." Defendant testified that their difficulty communicating occurred either because of the officer's limited Spanish or because the officer was trying to get him to say that he had touched the victim's vagina. Additionally, defendant called an expert, who testified that the officer's Spanish was "poor."

Although the issue is closer, we cannot say that any error in admitting the detective's testimony was harmless in light of defendant's admission to the officer. The state introduced evidence that permitted the jury to find that defendant had touched the victim's vagina on two separate occasions— once when his wife was home and once when she was away

---

[10] The trial court explained that, based on what the court-certified interpreters were telling it, the officer was paraphrasing what defendant had said and his translation was "off. It's not a good translation." The court previously had ruled that the state could not have the court interpreters translate the videotape for the jury, and the state was unable to get a court-certified interpreter to translate the videotape. Accordingly, it relied on the officer to translate.

for the night. Because the jury convicted defendant of touching the victim's vagina on one occasion and acquitted him of touching it on the other (and the instructions and jury verdict forms provide no basis for determining which incident gave rise to the conviction), there is some question whether the jury relied on the admission that the officer recounted in finding defendant guilty. But, even if we assume that the jury found the officer's testimony more credible than defendant's and convicted him on that basis, we cannot say that erroneously admitting the detective's statements had little likelihood of affecting the jury's verdict; that is, we cannot say that the erroneous introduction of the victim's detailed narrative did not affect the jury's decision to disbelieve defendant's trial testimony regarding his admission and to credit the officer's version of defendant's admission. Because the error was not harmless, the Court of Appeals decision and the trial court's judgment must be reversed, and the case remanded for further proceedings.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.