SHORR, J., dissenting.
I respectfully dissent from the majority opinion because I would hold, first, that the trial court erred when it admitted into evidence the twins' father's testimony that his daughter KLM had told him that his other daughter SAM had stated that she was raped by defendant. I would conclude that the father's testimony included inadmissible hearsay within hearsay. And second, contrary to the majority, I would hold that the admission of that testimony was not harmless error. I agree, however, with the majority that the trial court did not err either when it concluded that defendant was competent to be sentenced or when it denied defendant's motion for a new trial.
Because the majority does not address the merits of the dispute over the admission of the hearsay testimony and instead begins with a consideration of whether any presumed error in admitting that testimony was prejudicial, I first address the hearsay issue.[1] Hearsay is an out-of-court "statement * * * offered in evidence to prove the truth of the matter asserted." OEC 801(3). Double hearsay-also called hearsay within hearsay or multiple hearsay-exists when testimony is offered "in which the witness quotes one out-of-court declarant who in turn quotes another out-of-court declarant." Laird C. Kirkpatrick, Oregon Evidence § 801.01(3)(d), 708 (6th ed. 2013). Under OEC 805, double hearsay is admissible only if each level of hearsay is independently admissible under one or more recognized hearsay exceptions or can be categorized as "not hearsay."[2] Id.
*877 In State v. Rodriguez-Castillo , 345 Or. 39, 188 P.3d 268 (2008), the Supreme Court determined that a witness's testimony contained double hearsay under circumstances similar to this case. In that case, a detective testified about statements alleging sexual abuse conveyed to him by Perez, who served *407 as an interpreter of the victim's statements in the context of a police interview. Id. at 47, 188 P.3d 268. The court explained that the detective "based his testimony on two separate statements: (1) the victim's statement to Perez that defendant had assaulted her and (2) Perez's statement to the detective that the victim had said that defendant had assaulted her." Id. Under those circumstances,
"[e]ach statement asserts a related but separate proposition. The first statement asserts what defendant did. The second statement asserts that the victim said that he did it. * * *
"In many cases, a second person may seek only to repeat what another person said and thus may intend to serve only as a conduit, but it does not follow that the second person's repetition of the first person's statement does not add another layer of hearsay."
Id.
Similarly, in this case, the twins' father based his testimony on two statements that are related but assert separate propositions: (1) SAM's statement to KLM asserts that defendant had raped her, and (2) KLM's relaying of that statement to their father asserts that SAM told KLM that defendant had raped her. Based on his testimony, the father never heard SAM directly assert that defendant had raped her. The twins' father's testimony contained two layers of hearsay.
Because the father's testimony involved double hearsay, the trial court had to determine under OEC 805 whether each layer of hearsay was admissible under some exception to the hearsay rule. As described above, OEC 803(18a)(b) provides a hearsay exception for statements concerning sexual abuse. The exception provides, in relevant part, that
*878 "[a] statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005 * * * is not excluded by ORS 40.455 [, which provides that hearsay is not admissible unless an exception applies,] if the declarant * * * testifies at the proceeding and is subject to cross-examination[.]"
OEC 803(18a)(b).
In this case, SAM and KLM both testified at trial and were subject to cross-examination. There is little doubt that SAM's statement to KLM asserting that defendant had raped her would have been admissible under OEC 803(18a)(b) if KLM had testified about the statement directly. But that did not happen. Instead, KLM relayed SAM's statement to their father during an out-of-court conversation and the father then relayed KLM's statement during his testimony at trial. The question to be resolved is whether the father's testimony was admissible under the same hearsay exception that would have applied if KLM had testified about SAM's statement directly.
The meaning of the phrase "[a] statement * * * concerning an act of abuse" presents a question of statutory interpretation that requires an examination of the disputed text in its statutory context and, to the extent we find it useful, relevant legislative history. State v. Gaines , 346 Or. 160, 170-71, 206 P.3d 1042 (2009). Here, OEC 803(18a)(b), on its face, does not squarely indicate whether the exception applies beyond the first level of hearsay when a statement alleging abuse is passed on by the initial recipient of that statement to the testifying witness. The state noted at oral argument that it was "not clear or beyond dispute" whether the exception covered subsequent layers of hearsay.
The phrase "concerning an act of abuse" suggests that the exception applies broadly as to the kinds of statements that are admissible. State v. Hobbs , 218 Or.App. 298, 304-05, 179 P.3d 682, rev. den. , 345 Or. 175, 190 P.3d 1237 (2008) (determining that the exception has "an expansive scope to allow statements that relate to or are about an act of abuse"). For example, the exception encompasses statements concerning the abusive act and those that "set the scene" for the act. Id. But it does not necessarily follow that multiple levels of hearsay-whereby those statements are passed on to other *879 recipients by successive declarants-are admissible as a result. Likewise, the statutory context generally supports a broad reading of the exception but does not resolve its applicability in a multiple hearsay scenario.
Although the statutory text does not explicitly address whether the exception applies *408 to multiple layers of hearsay, the Supreme Court resolved that ambiguity, at least as it pertains to the issue presented by this case, in Rodriguez-Castillo . In Rodriguez-Castillo , the court concluded that OEC 803(18a)(b) applies to statements concerning abuse made directly by the purported victim to a testifying witness but does not necessarily cover additional layers of hearsay if the purported victim's statement is passed on by the initial recipient to others. 345 Or. at 48-49, 188 P.3d 268. After concluding that the testimony at issue in that case involved double hearsay, the court explained that
"[t]he victim's statements that defendant had abused her would have been admissible under OEC 803(18a)(b) if she had made them to the detective and he had been able to testify to them without Perez's intervention. That did not happen, however. Instead, the victim told Perez what happened, and Perez told the detective. Perez's statements to the detective added another layer of hearsay but not the kind of hearsay that is admissible under OEC 803(18a)(b) . Accordingly, the detective's testimony was admissible only if Perez's out of court statement came within some other exception to the rule against hearsay."
Id. (emphasis added). Based on that analysis, it appears that the court determined that the second layer of hearsay-the statement by the recipient of the initial disclosure to a third party-was not admissible under OEC 803(18a)(b).
While KLM could have testified under that exception that SAM had relayed to her an allegation of rape, their father's testimony did not "concern abuse" in the same way. Instead, it concerned a statement about a different statement made by a different declarant concerning abuse. The hearsay exception provided by OEC 803(18a)(b) may be broad, but it is not so broad that it encompasses hearsay that far removed from the initial disclosure. If the exception extended past the initial layer of hearsay, there is no *880 principled reason that it would not extend to triple hearsay, quadruple hearsay, or beyond.
The legislative history further supports my conclusion regarding the scope of OEC 803(18a)(b). In 1991, the legislature amended OEC 803(18a)(b) to encompass statements "concerning an act of abuse" where before it only extended to statements "describing" abuse. Chris Gardner of the Oregon District Attorneys Association suggested that change. In his testimony in support of the amendment, Gardner explained that the change was necessary to ensure that the exception encompassed statements beyond those describing only sexual conduct. In his view, the exception was important to bolster the credibility of children at trial who have alleged sexual abuse. Gardner went on to explain that,
"[w]ith most sex abuse, the only evidence we have-it's a credibility case, based on the word of the child versus that of the perpetrator. And some of the most compelling evidence is how did the child go about disclosing the abuse? * * * What were the circumstances when they told? * * * What was the child's demeanor at the time? And simply we seek to allow that child and the people who heard that child to lay that picture out."
Tape Recording, Senate Committee on Judiciary, HB 2395, May 20, 1991, Tape 170, Side B (statement of Chris Gardner, Oregon District Attorneys Association) (emphasis added). The Senate Committee on Judiciary then passed the amendment out of committee, and the legislature ultimately enacted the amendment.
While statements of nonlegislators sometimes provide "limited assistance in determining the legislature's intent," we may give "greater weight" when the nonlegislator, as here, was "the drafter[ ] and principal proponent[ ] of a bill, and it is clear that the legislature relied on [the] explanations." Kohring v. Ballard , 355 Or. 297, 311-12, 325 P.3d 717 (2014). With Gardner's explanation of the amendment in mind, it is difficult to conclude that the legislature intended the exception for statements "concerning an act of abuse" to apply in multiple hearsay scenarios like the one in this case. A testifying witness who learns from a third party that a child has made statements alleging sexual *409 *881 abuse is not capable of testifying in any meaningful way to the circumstances when the disclosure was made and cannot comment on the child's demeanor at the time. Because a witness in that situation did not hear the child directly, he or she is unable to lay out an accurate picture for the trier of fact describing the manner in which the child disclosed the abuse. As a result, that witness cannot testify in a manner consistent with the apparent motivating force behind the expansion of OEC 803(18a)(b) to statements "concerning an act of abuse."
In sum, I would hold that the twins' father's testimony relaying KLM's statement concerning SAM's allegation of rape was hearsay and was not admissible under OEC 803(18a)(b) or any other exception.
Turning to the issue of harmless error, where I depart from the majority's analysis, I conclude that the trial court's error was not harmless. In assessing whether an error is harmless, "we assess whether the jury would have found the evidence to be duplicative, cumulative, or unhelpful in its deliberations." State v. Chandler , 278 Or.App. 537, 541, 377 P.3d 605, rev. den. , 360 Or. 568, 385 P.3d 82 (2016) (citing State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) ). We also consider the extent to which the disputed evidence was or was not central to the parties' theories of the case. Davis , 336 Or. at 35, 77 P.3d 1111. If there is little likelihood that the error affected the verdict, we will not reverse on the basis of that error. State v. Bradley , 253 Or.App. 277, 283-84, 290 P.3d 827 (2012) (citing Davis , 336 Or. at 32-33, 77 P.3d 1111 ).
While I agree with the majority's recitation of the harmless-error standard, I disagree with its application of that standard because I conclude that the evidence here was not duplicative, cumulative, or unhelpful. The evidence also was not so tangential to the sexual abuse and digital penetration charges against defendant as to be harmless.
In applying the harmless-error standard, we have previously explained that
"[e]vidence is cumulative when it demonstrates the same thing as other admitted evidence. See State v. Klein , 243 Or.App. 1, 14, 15, 258 P.3d 528 (2011), aff'd , 352 Or. 302 [283 P.3d 350] (2012).
*882 Alternatively, evidence is not cumulative when it presents qualitatively different proof than other admitted evidence. Id. (excluded evidence was not 'different in nature' and, thus, was unlikely to have affected the verdict). In Davis , the court noted that the erroneous admission of evidence would be harmless 'if the particular issue to which the error pertains has no relationship to the jury's determination of its verdict,' or 'if the jury would have regarded the * * * evidence as duplicative or unhelpful to its deliberations.' 336 Or. at 32-33 [77 P.3d 1111]."
Id. at 285, 290 P.3d 827. The evidence here was neither cumulative nor duplicative. As defendant argued in briefing, it was a "harsh, brutal, unequivocal indictment of defendant," and the fact that the accusation against defendant was characterized as rape, which was not charged, made the evidence more prejudicial to defendant. Indeed, the accusation of rape was the only time in the trial that defendant had been directly accused of "rape" rather than the other forms of sexual abuse that defendant was charged with. That accusation came through the twins' father as he relayed an otherwise unequivocal and spontaneous accusation of rape against defendant by one of his daughters (as relayed through another daughter) when she told her father that the abuse "was a lot worse" than inappropriate touching.
The father's testimony was qualitatively different in nature from other testimony at trial and was not corroborated by other forms of evidence. As described in the majority opinion, the complainants and other witnesses testified to various forms of sexual abuse and digital penetration by defendant, but none reported rape. It is difficult to imagine that, in the context of this case, an accusation that defendant raped one of the complainants would have "no relationship to the jury's determination of the verdict" or that the jury would find it "unhelpful to its deliberations." See Davis , 336 Or. at 32-33, 77 P.3d 1111.[3]
*410 *883 I acknowledge that the state presented other significant evidence against defendant, well summarized by the majority, that certainly could have persuaded the jury that defendant had sexually abused the girls. But, when assessing harmless error, we are not permitted to weigh the evidence. State v. Marquez-Vela , 266 Or.App. 738, 746, 338 P.3d 813 (2014). Rather, we are limited to considering the likely effect of the error on the verdict. Id. Our task is not to reweigh the overall strength of the evidence, but primarily to determine whether the disputed evidence was "duplicative, cumulative or unhelpful." The twins' father's testimony relaying an allegation that defendant raped one of his daughters was substantively different than the other evidence presented.
The majority states that the challenged statement by SAM (relayed by KLM and then their father) accusing defendant of rape "would have" been understood by the jury to mean the same "unlawful sexual penetration act that defendant was charged with having committed." 294 Or.App. at 856, 433 P.3d at 395. It is certainly true, as the majority notes, that children do not always speak in precise fashion, perhaps particularly about sexual crimes that hopefully forever remain outside their reality. But, under Oregon criminal law, the crime of rape requires "sexual intercourse," ORS 163.355 to 163.375, which has its "ordinary meaning and occurs upon any penetration, however slight; emission is not required." ORS 163.305 (7). See also State v. Spring , 172 Or.App. 508, 514, 21 P.3d 657 (2001) (concluding that "[r]ape requires sexual intercourse, whereas sexual abuse does not"). Defendant was not charged with rape, and the jury was not instructed on rape. The jury was instructed on charges of sexual abuse under ORS 163.427, which does not require sexual intercourse, and the charge of sexual penetration under ORS 163.411, which requires proof of sexual penetration of intimate parts "with any object other than the penis or mouth *884 of the actor." It is not clear why the jury would necessarily have understood the allegation of rape to be duplicative or cumulative of allegations of other sexual abuse crimes.[4] The jury just as easily could have concluded that, if defendant had "raped" SAM, it was more likely that he had committed the charged acts of sexual abuse.
Our role is not to predict with precision how the jury would have perceived an allegation of rape that, at a minimum, at least could have been perceived by the jury in different ways.[5] Our job is to determine whether we can say that there is "little likelihood" that the admission of that evidence affected the verdict. Given that the jury certainly could have understood the allegation of rape to be consistent with the criminal law's definition of rape, I cannot say that the evidence was cumulative, duplicative or unhelpful, *411 or that there is little likelihood that the admission of that evidence affected the verdict. That is, I cannot say that there is little likelihood that the jury may have found defendant guilty of the other charges of sexual abuse based on the improperly admitted evidence that defendant had raped SAM.
I respectfully dissent.

As is apparent from my consideration of the hearsay issue, I also would hold that the hearsay issue was preserved by defendant in the trial court.

OEC 805 provides:
"Hearsay included within hearsay is not excluded under ORS 40.455 [Rule 802. Hearsay rule] if each part of the combined statements conforms with an exception set forth in ORS 40.460 [Rule 803. Hearsay exceptions] or 40.465 [Rule 804. Hearsay exceptions when declarant unavailable]."

There is an interesting, but theoretical issue regarding whether the trial court would have admitted or otherwise limited the evidence had defendant objected to the evidence on another basis, namely that the evidence of an uncharged allegation of rape was improper propensity evidence under OEC 404(3) and unduly prejudicial under OEC 403 or OEC 404(4). Instead, defendant raised a proper hearsay objection that should have been granted, so one can only speculate on objections that were not made. However, if there is a genuine dispute about whether the evidence would have been unduly prejudicial to defendant, that only would make it appear more likely that the evidence had a harmful effect on the jury. See State v. Baughman , 361 Or. 386, 405, 393 P.3d 1132 (2017) ("other acts evidence that is relevant for a nonpropensity purpose under OEC 404(3) generally will be admissible under OEC 403," but, "when evidence is relevant only to prove a defendant's character, more significant due process concerns are implicated, and, generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence").

Oregon criminal law provides that rape requires proof of sexual intercourse. ORS 163.355 - 163.375 ; ORS 163.305(7). Further, as discussed, the question is whether the jury would necessarily have understood the term rape to be the same act that defendant was charged with having committed against SAM. The majority is confident that it did. That understanding is one possibility, but it is also certainly possible-although I do not reserve or limit this understanding in any sense-that the jury understood the term to be consistent with the crime of rape.

To the extent that the majority raises issues with the dissent for analyzing harmless error through the lens of what the jury "could" have understood (294 Or.App. at 857-58, 433 P.3d at 396), that framing is required by the harmless-error standard, which asks whether there is little "likelihood" that the wrongly admitted evidence affected the verdict. Davis , 336 Or. at 32, 77 P.3d 1111.