HADLOCK, P. J.
*806 Defendant appeals a judgment of conviction for two counts of first-degree sexual abuse, ORS 163.427, and one count of attempted first-degree sexual abuse, ORS 163.427 and ORS 161.405. Defendant does not challenge the conviction for attempted sexual abuse and our opinion in this case does not disturb that conviction. Defendant does, however, challenge the two sexual-abuse convictions. He contends that the trial court plainly erred by not giving a jury concurrence instruction related to those two counts. For the reasons set out below, we agree that a concurrence instruction was plainly required in the circumstances present here. We also conclude that this is an appropriate case in which to exercise our discretion to address that error. Accordingly, we reverse and remand defendant's convictions *116 for first-degree sexual abuse, remand for resentencing, and otherwise affirm.[1]
Under State v. Ashkins , 357 Or. 642, 659, 357 P.3d 490 (2015), a jury concurrence instruction is required when an indictment charges a single offense, but "the evidence permit[s] the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator" if the state has not elected which occurrence constitutes the crime. In determining whether a concurrence instruction was required, we must consider all pertinent evidence admitted at trial. We summarize that evidence here, along with the pertinent procedural facts.
Defendant was charged with two counts of first-degree sexual abuse as follows, the first involving the victim's genital area and the second involving her breast:
"COUNT 1 The defendant, on or about May 24, 2015, in Clackamas County, Oregon, did unlawfully and knowingly, by means of forcible compulsion, subject [the victim] to sexual contact by touching her genital area, a sexual and intimate part of [the victim].
*807 "COUNT 2 The defendant, on or about May 24, 2015, in Clackamas County, Oregon, did unlawfully and knowingly, by means of forcible compulsion, subject [the victim], to sexual contact by touching her breast[,] an intimate part of [the victim]."
The case was tried to a jury. The victim testified that, on the evening in question, her boyfriend (Bustillos), a mutual friend (McLean), and defendant, whom the victim had not previously met, joined the victim at the apartment she shared with Bustillos. After spending a few hours together, the group walked to a pub, spent some time there, and then started walking back to the apartment. Bustillos and McLean stopped at a store, but defendant and the victim went on to the apartment. The victim testified that defendant started grabbing his crotch, then followed her when she went into the bathroom to get away from him. In the bathroom, defendant rubbed himself against the victim and grabbed her neck, "pulling [her] down and trying to get [her] to suck his penis." The victim fought, pushing defendant away and telling him "no," before she managed to leave the room. Those events formed the basis for the attempted sexual abuse charge, which is not at issue on appeal.
The victim also testified about the subsequent events that served as the basis for the two charged counts of sexual abuse-one count for touching her breast and one for touching her genital area. The victim testified that, after leaving the bathroom, she went to her bedroom to retrieve pepper spray, but defendant followed her, pushed her onto the bed, and began "groping [her] breasts and grabbing [her] vagina forcefully." The victim repeatedly told defendant to stop, but he did not. After five or 10 minutes, the victim was able to push defendant off of her and leave the room. She got as far as the kitchen before defendant "pushed [her] against the edge of the refrigerator full-force with his arm on [her] chest," and began "fondling [her] again and * * * grabbing [her] crotch and [her] breasts." At some point, the victim could hear Bustillos and McLean coming toward the apartment. Defendant stopped what he was doing and sat on the couch "like nothing ever happened." The victim told Bustillos and McLean that defendant had tried to force himself on her. Defendant fought with Bustillos, then left.
*808 Police officer Wiesman was dispatched to the apartment and spoke with the victim for about an hour. During that conversation, the victim said that defendant had followed her into the bedroom, grabbed her breast, and tried to pull her pants down. The victim did not say anything about defendant grabbing her genital area while they were in the bedroom. Nor did she tell Wiesman about having been in the kitchen with defendant. Rather, she told Wiesman that she had stayed in the bedroom until she thought she heard Bustillos' and McLean's voices outside, then went into the living room, where defendant *117 grabbed her crotch while she looked out the window.
Bustillos and McLean also testified. Bustillos said that the victim told him that defendant exposed his penis in the bathroom and started "groping up against her," that "it led out to the kitchen," and that-in the bedroom-defendant and the victim were "on the bed and he was trying to pull down her sweats, but she said that luckily they were tight, too tight, and she was pushing him off." McLean testified that the victim had said that defendant "tried to force himself on her and exposed himself to her."
During closing argument, the state discussed both the bedroom encounter and the kitchen encounter, describing each as involving forcible touching of both the victim's breasts and her genital area. The state later explained the bases for the two counts of first-degree sexual abuse, "one for fondling her breast and one for grabbing her vaginal area. * * * Again Count 1, sexual abuse in the first degree. That's for grabbing the breasts. Count 2, sexual abuse in the first degree, the vaginal area." In his closing argument, defendant focused on the discrepancies between the victim's account to police and her testimony about what happened in the bedroom and the kitchen. In its rebuttal, the state attempted to shift the jury's focus to the bedroom: "The bedroom incident, he * * * starts fondling her breasts and her vaginal areas, he's guilty of sexual abuse in the first degree, period, end of story right there." The state then suggested that the jury could convict defendant of both counts of sexual abuse based on the bedroom incident even if it was not persuaded about what happened in the kitchen:
*809 "We know that happens again in the kitchen. Okay? That doesn't add, necessarily, to the charges, but it adds to what we know-it adds to her story, and that's part of her story. When he pushes her down, face down on the bed, flips her over, climbs on top of her and starts fondling or grabbing her breasts, tugging on her pants and up in her vaginal area, he's guilty right there. So we don't need to get into the bathroom. If you had issues in your mind about what happened-excuse me, the kitchen. If you have issues about the kitchen, you can stop right there."
Defendant did not ask the court to require the state to elect the occurrence (bedroom or kitchen) on which it would proceed or to instruct the jury that it had to concur on the occurrence that constituted the basis for each count of sexual abuse. Nor did the court do either of those things; its instructions to the jury did not include a concurrence instruction. The court did instruct the jury that, "to establish the crime of sexual abuse in the first degree, the State must prove beyond a reasonable doubt * * * that the act occurred on or about May 24th, 2015," and that "ten or more jurors must agree on your verdict." The verdict form asked the jury to indicate whether defendant was guilty or not guilty "of the charge of Sexual Abuse in the First Degree as alleged in Count 1 of the Indictment"; it included analogous directions with respect to Counts 2 and 3. The jury returned guilty verdicts on each count.
On appeal, defendant argues that the trial court plainly erred by failing to instruct the jury that, to render guilty verdicts on Counts 1 and 2, at least 10 jurors had to concur on which occurrence constituted the sexual abuse for the purpose of each count. Defendant asserts that jurors could find from the evidence that defendant sexually abused the victim by touching her genitals either in the bedroom or in the kitchen (for Count 1) and sexually abused the victim by touching her breasts either in the bedroom or in the kitchen (for Count 2). Defendant argues that the trial court was therefore required to give a concurrence instruction because the state did not elect the incident on which it would rely. Further, defendant argues that the error was not harmless and he urges us to exercise our discretion to correct the error.
*810 The state acknowledges that, when the evidence would permit the jury to find multiple, separate occurrences of a crime charged as a particular count in the indictment, election or a concurrence instruction ordinarily is required. Nonetheless, the state argues that no such instruction was required in this case because other information given to the jury obviated the need for a concurrence instruction. At least, the state contends, that is *118 a plausible argument under State v. Rodriguez-Castillo , 210 Or. App. 479, 151 P.3d 931 (2007), rev'd on other grounds , 345 Or. 39, 188 P.3d 268 (2008), so there is not plain error on this record. The state also contends that we should not exercise our discretion to correct an error if one exists because any error was "not particularly grave or prejudicial" and because reviewing for plain error gives defendants incentive not to request concurrence instructions in similar cases. Finally, the state asserts that "the jury's instructions, the verdict form, and the prosecutor's emphasis at closing argument on a particular occurrence"-the bedroom incident-rendered any error harmless.
We begin our analysis by determining whether the trial court plainly erred. To constitute plain error, the error must (1) be one of law; (2) be apparent, obvious, or not reasonably in dispute; and (3) "appear on * * * the record." Ailes v. Portland Meadows, Inc. , 312 Or. 376, 381-82, 823 P.2d 956 (1991). Here, the parties' disagreement centers on whether it is "reasonably in dispute" that the trial court erred by not giving a concurrence instruction.
That disagreement is resolved by Ashkins and State v. Pipkin , 354 Or. 513, 316 P.3d 255 (2013). In Pipkin , the Supreme Court explained that, under Article I, section 11, of the Oregon Constitution, jurors can return a guilty verdict only if they "agree that the state has proved each legislatively defined element of a crime." Pipkin , 354 Or. at 527, 316 P.3d 255. Two situations implicate that right: the first is "when a statute defines one crime but specifies alternative ways in which [it] can be committed," and the second is "when the indictment charges a single violation of a crime but the evidence permits the jury to find multiple, separate occurrences of that crime." Id. at 516-17, 316 P.3d 255. The court addressed the latter kind of situation in Ashkins , explaining that, when *811 an indictment charges "a single occurrence of each offense, but the evidence permit[s] the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator," the defendant is entitled to a concurrence instruction unless the state "elect[ed] which occurrence it would prove." 357 Or. at 659, 357 P.3d 490. At least after Ashkins , it is beyond dispute that a jury concurrence instruction (or election by the state) is required in those circumstances.[2]
Here, the evidence admitted at trial would have allowed the jury to determine that defendant committed sexual abuse by touching the victim's genital area-and, therefore, was guilty of Count 1-either in the bedroom or, later, in the kitchen. The same is true with respect to Count 2. The two incidents were separated temporally and spatially; they were presented to the jury as distinct occurrences. And, as the state acknowledges, although the prosecutor's rebuttal argument sought to focus the jury's attention on the bedroom incident, the state "did not abandon any and all reliance on the kitchen incident." Because different jurors could have voted to convict on each count based on different factual findings (as between the bedroom and the kitchen), it is plain that a concurrence instruction was required.
As noted, the state's contrary argument relies heavily on our decision in Rodriguez-Castillo . In that case, we held that the trial court did not plainly err by failing to give a *119 concurrence instruction in a case in which the defendant *812 was charged with multiple counts of sexual abuse, including four counts that related to the defendant touching the victim in two different incidents that occurred on a single day. 210 Or. App. at 498, 151 P.3d 931. The defendant was convicted of a single count (Count 7) and argued, on appeal, that the trial court erred by failing to give a concurrence instruction "to ensure that all of the jurors who voted to convict agreed on the same set of underlying facts." Id. at 496, 151 P.3d 931. In rejecting that unpreserved argument, we asserted that the jury had other information that "left no room for doubt" about the need for that kind of concurrence. Id. at 497, 151 P.3d 931. That information included (1) instructions on Count 7 that "twice referred to the alleged crime as 'the act,' " (2) the indictment, which described each count as "separate and distinct" from the other acts alleged, and (3) the verdict form, which indicated generally that 10 or more jurors had to concur on each verdict. Id . at 497-98, 151 P.3d 931. We concluded that it "was clear to the jury" from that information "that Count 7 corresponded to a particular factual incident," so a concurrence instruction was unnecessary. Id . at 498, 151 P.3d 931. The state contends that Rodriguez-Castillo governs here because the jury in this case received similar information from the trial court; at least, according to the state, Rodriguez-Castillo means that the court's failure to give a concurrence instruction cannot have been plain error.
We disagree. First, we note that we decided Rodriguez-Castillo before Ashkins and that we held in Rodriguez-Castillo only-at most-that the trial court in that case did not plainly err by not giving a concurrence instruction.[3] That holding was based not only on the other information given to the jury, but also on the state of the law at the time. We relied on the Supreme Court's decision in State v. Sparks , 336 Or. 298, 83 P.3d 304, cert. den. , 543 U.S. 893, 125 S.Ct. 219, 160 L.Ed.2d 158 (2004), for the proposition that concurrence instructions are not plainly required in cases in which "there was only *813 one victim and one perpetrator associated with each count" charged. Rodriguez-Castillo , 210 Or. App. at 499-500, 151 P.3d 931. We reasoned that, because evidence about the multiple incidents in Rodriguez-Castillo also involved only one defendant and one victim, it followed from Sparks that the lack of a concurrence instruction did not establish plain error. Id . at 500-01, 151 P.3d 931. In Ashkins , however, the Supreme Court expressly rejected that understanding of Sparks , which the court explained had actually been decided on a different basis-not on the ground that a concurrence instruction may not be required when the evidence describes multiple occurrences, but they all involve the same victim and perpetrator. 357 Or. at 658-59, 357 P.3d 490. The legal underpinning of Rodriguez-Castillo therefore does not survive Ashkins 's holding that, when an indictment charges "a single occurrence of each offense, but the evidence permit[s] the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator," either election or a concurrence instruction is required. Id. at 659, 357 P.3d 490.
Second, we are not persuaded by the state's effort to analogize this case to Rodriguez-Castillo , and to distinguish it from Ashkins , based on other information given to the jury. We acknowledge that the jury in this case received information similar to that on which we relied in Rodriguez-Castillo . But so did the jury in Ashkins . The Ashkins indictment, which was read to the jury, described each count in terms of "an act" that was "not part of the same criminal episode" alleged in other counts. 357 Or. at 644, 357 P.3d 490. The trial court also instructed the jury that "10 of the 12 of them must agree that the state established beyond a reasonable doubt the elements indicated in the charges of the indictment." State v. Ashkins , 263 Or. App. 208, 213, 327 P.3d 1191 (2014), aff'd , 357 Or. 642, 357 P.3d 490 (2015). That information is *120 not meaningfully different from the information that we relied on in Rodriguez-Castillo in determining that it was not plain that the trial court should have given a concurrence instruction. In Ashkins , however, the existence of that information did not lead the Supreme Court to conclude that no concurrence instruction was needed. Thus, to the extent that Rodriguez-Castillo can be read to hold that a concurrence instruction may not be necessary if the jury receives *814 that kind of other information, that aspect of the decision, too, is no longer viable in light of Ashkins .[4]
For both of those reasons, Rodriguez-Castillo 's discussion of when jury concurrence instructions are necessary cannot survive Ashkins . That is, Rodriguez-Castillo does not cast any reasonable doubt on the applicability of the Supreme Court's subsequent decision in Ashkins to this case. Accordingly, it is "not reasonably in dispute" that the trial court committed legal error when it failed to give a concurrence instruction. Ailes , 312 Or. at 381, 823 P.2d 956. We proceed to consider the third Ailes requirement for "plain error," i.e. , whether the error appears on the record.
In that regard, the state argues that we would have to go outside the record to resolve competing inferences about why defendant did not request a concurrence instruction. The state contends that defendant may have deliberately chosen not to seek such an instruction, either in reliance on Rodriguez-Castillo or because such an instruction would reduce defendant's odds of acquittal "by causing the jury to focus exclusively on testimony from the victim" about the bedroom incident, which the state suggests was more problematic for defendant than her testimony about what happened in the kitchen. We are not persuaded. As defendant argues, a concurrence instruction would have required the jury to consider the inconsistencies in the victim's accounts of what occurred in each room. The record suggests no plausible reason why defendant would have wished to discourage the jury from doing that. See State v. Lovern , 234 Or. App. 502, 512, 228 P.3d 688 (2010) (" '[C]ompeting inferences,' for purposes of the plain error analysis, must be plausible.").
Finally, the state argues that, because the trial in this case occurred after the Supreme Court decided Ashkins , defendant may have been "gambling on the verdict," relying on the absence of a concurrence instruction to guarantee *815 reversal on a plain-error basis if he ended up being convicted. That argument does not persuade us that the court's error was not plain. There may be cases in which the record supports an inference that such a choice occurred, but the record in this case does not do so. Cf. State v. Miranda , 290 Or. App. 741, 755, 417 P.3d 480 (2018) (rejecting a similar argument).
We also conclude that the trial court's error was not harmless. "A trial court's erroneous failure to give a concurrence instruction is not harmless when, given the evidence and the parties' theories, jurors could have based their verdicts on different occurrences." State v. Teagues , 281 Or. App. 182, 194, 383 P.3d 320 (2016) ; see also Mellerio v. Nooth , 279 Or. App. 419, 436, 379 P.3d 560 (2016), rev. den. , 361 Or. 803, 401 P.3d 1183 (2017) (trial counsel's failure to request concurrence instruction was not harmless because of risk that evidence could have persuaded individual jurors "as to one of the alleged incidents but not the other, or vice-versa, yielding an impermissible 'mix-and-match' verdict"). Here, some jurors could have been persuaded that defendant sexually abused the victim in the bedroom, and not in the kitchen (particularly given Wiesman's testimony that the victim did not describe having been abused in the kitchen). Other jurors might have found the victim's testimony about the kitchen incident more compelling than the bedroom testimony and may have voted to convict on that basis (particularly given the differences between the victim's *121 testimony about what happened in the bedroom and what she told Wiesman). Still others might have felt it unnecessary to determine in which room defendant assaulted the victim, as long as they were convinced that he forcibly touched her breasts and genital area at some point during their time alone in the apartment. Thus, it is plausible to conclude that, as we put it in Mellerio , the jury may have reached "an impermissible 'mix-and-match' verdict." 279 Or. App. at 436, 379 P.3d 560. On this record, the absence of a concurrence instruction leaves us unable to conclude that there is "little likelihood that the error affected the verdict." Ashkins , 357 Or. at 660, 357 P.3d 490. Given the gravity of the error, we exercise our discretion to correct it.
Convictions for first-degree sexual abuse reversed and remanded; remanded for resentencing; otherwise affirmed.

On one of the sexual abuse counts, the jury's guilty verdict was not unanimous. On appeal, defendant contends that the trial court erred when it imposed a judgment of conviction based on that nonunanimous vote. Because we reverse the conviction on other grounds, we need not address that argument.

Both before and after Pipkin and Ashkins were decided, we have held that trial courts plainly erred by not giving concurrence instructions when the evidence would allow jurors to choose between multiple, separate occurrences of criminal conduct in finding the defendant guilty of a single count. See State v. Sippel , 288 Or. App. 391, 394, 406 P.3d 207 (2017) (trial court plainly erred by not giving concurrence instruction "given the manifest potential, based on the prosecutor's rebuttal, for the jury to find defendant guilty without actually agreeing on what conduct" constituted the charged crime); State v. Pervish , 202 Or. App. 442, 463, 123 P.3d 285 (2005), rev. den. , 340 Or. 308, 132 P.3d 28 (2006) (trial court plainly erred in failing to give a concurrence instruction where a particular count charged could have related to an offense committed against either of two victims). Based on the Supreme Court's controlling decision in State v. Phillips , 354 Or. 598, 317 P.3d 236 (2013), we also have repeatedly held that trial courts plainly err by not giving concurrence instructions when the jury could have found a defendant guilty on either a principal-liability theory or an aid-and-abet theory, and the state did not elect between the two. E.g. , State v. Miranda , 290 Or. App. 741, 755, 417 P.3d 480 (2018).

We also explained in Rodriguez-Castillo that, "even if the failure to give [a concurrence] instruction were plainly erroneous, we would exercise our discretion not to consider the error." 210 Or. App. at 501, 151 P.3d 931. Given that discretionary determination, we had no need to decide, in the first instance, whether the trial court plainly erred in not giving the instruction. That aspect of the opinion therefore is arguably dictum .

Although the Supreme Court granted review in Rodriguez-Castillo , it was to address a hearsay question, not the concurrence-instruction issue. 345 Or. 39, 45, 188 P.3d 268 (2008). Nonetheless, it is worth noting that the court observed, in conducting a harmless-error analysis, that "the instructions and jury verdict forms provide no basis for determining which incident gave rise to the conviction," id . at 55, 188 P.3d 268, expressing apparent disagreement with our reasoning on that point.