Submitted June 21, 2022; remanded for resentencing, otherwise affirmed April 26, petition for review denied August 31, 2023 (371 Or 332)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYRII RASHAD PRIESTER,
*Defendant-Appellant.*

Clackamas County Circuit Court
19CR41155; A173289

530 P3d 118

Defendant was convicted of, among other things, attempted first-degree rape. On appeal from the judgment of conviction, he raises three assignments of error, one of which he concedes was mooted by an amended judgment. On his remaining assignments of error, he first contends that the trial court erred when it denied his motion for a judgment of acquittal. Defendant also challenges one probation condition imposed by the trial court as part of a domestic violence package (DV package), arguing that it was imposed for the first time in the judgment, was not narrowly tailored to the purposes of his probation without infringing on his fundamental right of association, and is unconstitutionally vague under the Due Process Clause of the United States Constitution. *Held*: The record contained sufficient evidence for a reasonable factfinder to find each element of attempted first-degree rape; the trial court did not err in denying defendant's motion for a judgment of acquittal. However, because reference to a "DV package" at sentencing did not establish that all parties had the same understanding of what it included, the shorthand phrase was insufficient to meet the requirements of ORS 137.030(1), which requires a sentence to be announced in open court. Accordingly, the challenged probation condition was erroneously imposed for the first time in the judgment. Furthermore, the probation condition's use of the phrase "any domestic partner" is unconstitutionally vague.

Remanded for resentencing; otherwise affirmed.

Ulanda L. Watkins, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sara F. Werboff, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Remanded for resentencing; otherwise affirmed.

Powers, J., concurring in part, dissenting in part.

**HELLMAN, J.**

Following a bench trial, defendant was convicted of, among other things, attempted first-degree rape, ORS 161.405 and ORS 163.375. On appeal from the judgment of conviction, he raises three assignments of error. First, he contends that the trial court erred when it denied his motion for a judgment of acquittal on Count 1, attempted first-degree rape. Second, defendant challenges one probation condition imposed by the trial court as part of a domestic violence package (DV package), arguing that it was imposed for the first time in the judgment, was not narrowly tailored to the purposes of his probation without infringing on his fundamental right of association, and is unconstitutionally vague under the Due Process Clause of the United States Constitution. Defendant concedes that his third assignment of error was made moot by an amended judgment. Accordingly, we do not address it.

For the reasons below, we conclude that there is sufficient evidence such that a reasonable factfinder could find defendant guilty of each element of attempted rape in the first degree and affirm the conviction. As to the probation condition, however, we conclude that the court erred by imposing that condition for the first time in the written judgment and, furthermore, that the condition is unconstitutionally vague. Accordingly, we remand for resentencing and otherwise affirm.

## I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Consistent with our standard for reviewing the denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). We also state the procedural history as it pertains to the imposition of the challenged probation condition, which we review for legal error. *State v. Gallo*, 275 Or App 868, 869, 365 P3d 1154 (2015).

Defendant and CP were living together in an intimate relationship the week that defendant's cousin passed away. Late one night, defendant wanted to have sex with

CP, pulled her panties down, and climbed on top of her. CP said that she did not want to have sex and was able to stop penetration by covering her vagina with her hand and pushing him off of her. Defendant then "popped up" on her by climbing back on top of her once or twice more, "got in that dominant position and tried to have sex again." Though the evidence does not clearly explain the sequence of what happened next, CP again refused to have sex, defendant yelled at her about refusing sex, and defendant held CP by the wrists or arms with both hands and/or used both hands to choke her for what felt to CP like a minute. Finally, defendant stopped choking her, then left the room to play video games and smoke a cigarette to calm down.

The next morning, CP asked her sister to call the police, and Officer Walther, Sergeant Foreman, and Officer Campos responded. Defendant and CP both spoke to each officer and the sergeant before defendant was arrested. Defendant was indicted by a grand jury for attempted first-degree rape, ORS 161.405 and ORS 163.375 (Count 1), strangulation, ORS 163.187 (Count 2), unlawful possession of cocaine, ORS 475.884 (Count 3), fourth-degree assault constituting domestic violence, ORS 163.160 (Count 4), menacing constituting domestic violence, ORS 163.190 (Count 5), and harassment, ORS 166.065 (Count 6).

After indictment, defendant waived his right to a jury and proceeded to a bench trial. At the trial, Walther, Foreman, Campos, CP, CP's sister, and defendant testified, and, among other things, CP's recorded grand jury testimony and recorded jail calls between CP and defendant were entered as evidence. After the close of evidence, the court found defendant guilty on all counts.

At the beginning of the sentencing hearing that followed, the state presented its sentencing recommendations by giving the court and defendant a copy of a uniform criminal judgment form. On that form, next to but separate from a box entitled "probation," there is a list of four different "package[s]." The state had checked the box for "DV Package" for Counts 4, 5, and 6. In defendant's presence, the state explained most of the recommendations on that form to the court but did not mention the packages or any

probation conditions. Defendant responded to the state's recommendations, also not referring to the packages or probation conditions. The court then orally imposed sentences for each conviction, including adding the "domestic violence package" to probationary sentences for Counts 4 through 6.[1] After announcing the sentence, in an apparent effort to ensure that defendant did not blame CP for his convictions, the court addressed defendant directly to tell him that its finding concerning Count 1, attempted rape in the first degree, was based entirely on police testimony. Defendant made no objections throughout the sentencing hearing.

The special probation conditions contained in the DV package—including, "Disclose nature of conviction to any domestic partner"—were listed for the first time in the written judgment that followed.

The two questions before us are (1) whether there was sufficient evidence to deny a motion of acquittal of Count 1, attempted first-degree rape, and (2) whether it was error for the trial court to impose the special condition of probation that requires defendant to disclose the nature of his conviction to any domestic partner.

## II.   THE TRIAL COURT DID NOT ERR
## WHEN IT DENIED DEFENDANT'S MOTION
## FOR A JUDGMENT OF ACQUITTAL ON COUNT 1

As noted, defendant contends that the "trial court erred when it denied defendant's motion for judgment of acquittal on Count 1, attempted first-degree rape." A court must grant a motion for a judgment of acquittal "if the evidence introduced theretofore is such as would not support a verdict against the defendant." ORS 136.445. In reviewing the court's denial of a motion for acquittal, the question is not whether we believe that the defendant committed the offense beyond a reasonable doubt, but whether the evidence is sufficient for the trier of fact to so find. *Cunningham*, 320 Or at 63.

In the instant case, we are tasked with determining whether the state provided sufficient evidence for a rational

---

[1] The court also imposed the "substance abuse package" for Counts 3 through 6; nothing about that package is challenged on appeal.

factfinder to infer, beyond a reasonable doubt, that defendant "intentionally engage[d] in conduct which constitutes a substantial step toward" having sexual intercourse with another person by subjecting them to "forcible compulsion." ORS 163.375 (first-degree rape); ORS 161.405(1) (attempt); *Cunningham*, 320 Or at 63 (providing the standard of review). As we recently explained, forcible compulsion requires that

> "the physical force used by the defendant must be greater than or qualitatively different from the simple movement and contact that is inherent in the action of touching an intimate part of another. The force also must be sufficient to compel the victim, against the victim's will, to submit to or engage in the sexual contact. That is, there must be a causal connection between the sexual contact and forcible compulsion elements. However, the force need not be violent or dominating. Significantly, the force that is sufficient to compel one person to submit to or engage in a sexual contact against his or her will may be different from that which is sufficient to compel another person to do so."

*State v. Nygaard*, 303 Or App 793, 798, 466 P3d 692, *rev den*, 367 Or 115 (2020) (internal quotation marks and citations omitted).

In this case, the evidence is sufficient to support defendant's conviction. Walther testified that during his interview of defendant, defendant gave his own account of the incident as follows:

> "He said that, at about 1:00 a.m., he wanted to have sex. He said—he told me, quote, 'I pulled down her panties, got on top of her, and tried to have sex, and she said no.'
>
> "* * * * *
>
> "[Defendant] told me that [CP] pushed him off of her after telling him that she didn't want to have sex.
>
> "* * * * *
>
> "At that point, he angrily stated, and I quote, 'I didn't rape her.'
>
> "* * * * *
>
> "I told [defendant] that no one was accusing him of rape and asked him what happened next.

"[Defendant], at that point, told me, quote, 'I got—I got back on top, got in that dominant position, and tried to have sex again.'

"*****

"The one comment that he made [about strangling her] at the initial contact was that he told me, 'I didn't choke her. I know how it feels, and I didn't like it. I don't need to choke anyone.'

"*****

"I asked him at that time, when he got back on top of her, if he maybe accidentally had put his hands on her shoulders or upper chest or on her neck. And [defendant] replied, and I quote, 'I grabbed her arms and pinned her—pinned them down.' And then he added that he didn't need to choke someone, telling me, 'I might pin you to the ground. I might pin your arms down.'"

With deference to the trial court's explicit and implicit credibility determinations, Walther's testimony that CP told defendant that she did not want to have sex and pushed him off of her, then he "got back on top, got in that dominant position, and tried to have sex again" while "grabb[ing] her arms and *** pinning them down," is sufficient evidence on its own for a reasonable factfinder to conclude that defendant "intentionally engage[d] in conduct which constitutes a substantial step toward" having sexual intercourse with CP by subjecting her to "forcible compulsion."

### III.   THE TRIAL COURT ERRED WHEN IT IMPOSED A PROBATION CONDITION FOR THE FIRST TIME IN THE JUDGMENT

Defendant also contends that "[t]he trial court erred when it required, as a special condition of probation, that defendant disclose the nature of his conviction to any domestic partner." Defendant contends that the imposition of that condition is erroneous for three reasons: (1) the court erred when it imposed the challenged probation condition for the first time in the judgment; (2) the condition is not narrowly tailored to the purposes of his probation, as required by the federal constitution; and (3) the terms of the

probation condition are unconstitutionally vague. His first and last arguments are determinative, so we do not address the second.

A.  *The condition was imposed for the first time in the judgment.*

A criminal defendant has the right to have their sentence announced in open court. ORS 137.030(1); *State v. Jacobs*, 200 Or App 665, 671, 117 P3d 290 (2005). A trial court commits reversible error if it does not do so, and the result is usually a resentencing. *State v. Bates*, 315 Or App 402, 404, 500 P3d 746 (2021).

During its oral pronouncement of defendant's sentence, the trial court listed "DV package" as a condition for Counts 4, 5, and 6, but did not provide any further explanation of that phrase. Defendant argues that because the trial court simply referenced the "DV package" in open court without explaining what conditions were specifically included, the court imposed the challenged condition for the first time in the written judgment. Defendant asserts that doing so was reversible error.

The state disagrees, contending that the trial court's use of the shorthand phrase "DV package" satisfied its statutory obligation to announce probation conditions in open court.

At its core then, the dispute in this case is whether the use of the shorthand phrase "DV package" conveyed enough about the conditions that were listed in the written judgment such that we can conclude that the challenged condition was announced in open court. We agree with defendant that it did not.

In some circumstances, we have held that the use of a shorthand phrase in open court gives sufficient notice of specific conditions that are included. Those situations occur when shorthand phrases refer to conditions that were previously discussed in open court or when the phrase is a term of art that has an agreed upon meaning. In those situations, we do not consider a list of the specific conditions in the judgment to be the first time a condition is announced.

For example, in *State v. White*, 269 Or App 255, 344 P3d 510, *rev den*, 357 Or 300 (2015), the defendant alleged that a probation fee was erroneously imposed for the first time in the written judgment. In that case, the challenged fee was included in a statute listing general probation conditions, which the state referred to in shorthand by recommending "all the other general conditions that are normally asked for." *Id*. at 256. The trial court adopted that portion of the state's recommendation. We concluded that, when the state makes a sentencing recommendation and the trial court explicitly adopts the state's recommendation without elaborating on the details of that recommendation, those details are still a part of a sufficiently "orally pronounced sentence." *Id*. at 256-57.

In contrast, in *State v. Macy*, 312 Or App 234, 492 P3d 1277 (2021), we found that the use of the phrase "drug package" did not include a DUII conviction fee that was later imposed in the written judgment. At sentencing, the state separately listed its sentencing recommendations in open court, including the conviction fee and a "drug package." The court did not adopt all the state's recommendations. Instead, the court listed each element of the defendant's sentence in open court, including the drug package but not the conviction fee. However, the court later imposed that fee in the judgment. On appeal, the state argued that the fee was implied by the court's imposition of the drug package. We disagreed. We explained that "[a] 'drug package' in sentencing is not a term of art that means the same thing in all contexts, but we have acknowledged that, as a general matter, it is a package of special conditions of probation whose precise contours may vary among counties or judges." *Id*. at 237. Accordingly, because it was not made apparent "that the 'drug package' included the DUII conviction fee," that fee was not announced in open court. *Id*. at 236.

Together, those cases illustrate that two things must be true before use of a shorthand phrase can legally suffice as announcing a sentencing condition in open court. First, it must be apparent somewhere in the record that all parties had the same understanding of the meaning of the shorthand phrase and what it referred to. Second, it must be apparent somewhere in the record that the shorthand

phrase included the conditions that were eventually listed in the written judgment.

Neither of those requirements were met here. There is no evidence that there was a common understanding among the parties and the court of what the court meant when it used the shorthand phrase "DV package." As we recognized in *Macy*, shorthand references to "packages" can mean different things across different counties, or among judges. 312 Or App at 237. Here, there is no evidence of what "DV package" meant to these parties in Clackamas County at the time of defendant's sentencing.

Furthermore, there is no evidence that the condition defendant challenges here was included in the "DV package" the court imposed. In so concluding, we place no weight on the document the state appended to its brief on appeal. That undated document lists conditions, including the challenged condition, apparently included in a DV package in Clackamas County. However, there is no proof that that document was in effect at the time of defendant's sentencing, that the document was given to defendant, or that there was an understanding by anyone involved in this case—let alone defendant—that the court meant that exact document when it said "DV package."

We similarly disagree with the dissent that the existence of a standard county practice of submitting a proposed judgment and the use of the shorthand phrase "DV package" provides sufficient support for a conclusion that the challenged condition was announced in open court. Although the general practice of sentencing is a routine matter for courts, prosecutors, and defense attorneys, each defendant's sentencing proceeding is unique. And it is defendant's unique sentencing proceeding that we are examining here, not the general practice in Clackamas County. Thus, the existence of a general practice does not answer the question as to whether use of that practice resulted in compliance with the statutory and constitutional requirements in defendant's case.

The right to have one's sentence announced in open court means that the court must state all the terms of a defendant's sentence on the record at the time it sentences

the defendant. The use of shorthand is a deviation from that statutory and constitutional requirement; a deviation that the court chooses to employ. Thus, when a court uses shorthand, it is the court, not the defendant, that must ensure that the record of that sentencing proceeding reflects compliance with the statutory and constitutional requirements.

We are mindful of the dissent's concern that use of shorthand is a common practice for trial judges who are tasked with managing fast-paced and high-volume dockets. Nothing in this opinion should be read to hold that a trial court cannot use shorthand in satisfying the requirement to pronounce sentence in open court. What we do hold is that when shorthand is used, there must be evidence in the record to show exactly what the shorthand referred to, such that the shorthand did, in fact, serve as a mechanism to comply with the statutory and constitutional requirements to pronounce a defendant's sentence in open court. And although that evidence may exist in other cases, there was no such evidence in defendant's case.

In sum, references to the "DV package" in this case were not made in a manner that made the required probation conditions "apparent when viewed in context." *Macy*, 312 Or App at 238. Because it was not made clear—either in the record prior to sentencing or as presented in open court—that the challenged condition was a part of the "DV Package," that condition was imposed for the first time in the judgment. As noted, we will remand for resentencing when a court imposes conditions of probation in a judgment that have not been announced in open court.

B.   *The probation condition requiring disclosure of convictions to "any domestic partner" is unconstitutionally vague under the Fourteenth Amendment to the United States constitution.*

Although we normally would remand for resentencing at this juncture, defendant does not simply ask for resentencing, he also asks us to determine whether the probation condition requiring disclosure of his conviction to "any domestic partner" is unconstitutionally vague. Defendant asserts that preservation is not required because the error appeared for the first time in the judgment. The

state disagrees, contending that "[b]ecause the trial court pronounced that defendant would be subject to the 'DV Package' in open court, defendant had an opportunity and obligation to object to the imposition of any of its conditions." As a result, the state asserts, defendant had sufficient opportunity to object to both the DV package and its conditions such that preservation requirements are not excused. The state further argues that defendant's failure to object means the challenge was not preserved, so that any error must be plain for this court to address it. Again, we agree with defendant.

As we determined above, the use of the shorthand term "DV package" in open court was insufficient to announce the specific challenged condition. We have previously held that preservation is not required when "the error appears for the first time in the judgment." *State v. Bates*, 315 Or App 402, 404, 500 P3d 746 (2021). Because that is the situation here, we address the merits of defendant's argument.

We review a sentencing court's imposition of a probation condition for legal error. *Gallo*, 275 Or App at 869. Here, defendant claims that the probation condition that requires him to disclose the nature of his conviction "to any domestic partner" is unconstitutionally vague under the Fourteenth Amendment to the United States Constitution.[2] "A statute or probation condition is vague under the Due Process Clause if it contains a lack of notice so that [people] of common intelligence must necessarily guess at its meaning," or so that it "allows those who enforce it to do so in an arbitrary or discriminatory manner." *State v. Farris*, 312 Or App 618, 624, 492 P3d 744 (2021).

To determine whether the phrase "any domestic partner" is unconstitutionally vague, we first determine

---

[2] While a similar argument can be made under Article I, sections 20 and 21, of the Oregon State Constitution, defendant did not make such an argument. Accordingly, despite the "first things first" doctrine, we do not address it. *State v. Link*, 367 Or 625, 640, 482 P3d 28 (2021) (Oregon appellate courts "frequently state[] a preference for resolving disputes under state law, including the state constitution, if possible. On the other hand, it is a bedrock principle of appellate jurisprudence that courts generally should decide cases as framed by the parties' properly raised and preserved arguments.").

whether a definition has been provided to explain its use in this instance, such as in the probation condition or a related statute. *See, e.g.*, *Penn v. Board of Parole*, 365 Or 607, 631-32, 451 P3d 589 (2019) (first determining whether a disputed word is defined by the statute in which it is used). Then, we look to any available definitions of the term including dictionary and legal definitions to determine its ordinary or legal meaning. *See, e.g.*, *Penn*, 365 Or at 637 (considering the ordinary meaning of the word in question in a probation condition, citing a dictionary definition); *Farris*, 312 Or App at 621-22 (same). If a word or phrase remains vague, we then look to the context to determine whether the remaining text of the probation condition at issue will provide sufficient clarification to put a person "of common intelligence" on notice of its meaning. *Id.*; *see also Penn*, 365 Or at 637-38 (noting that the full text of a condition did not provide "additional wording or context" to narrow the meaning of a vague phrase). That approach is similar to how we analyze statutes under *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), but we frequently do not have the benefit of a robust legislative history to aid our analysis when it comes to determining the meaning of probation conditions.

"[A]ny domestic partner" is not defined in the probation condition, nor is there a statutory definition that directly applies to the criminal statutes involved in this case. We thus look to any other available definitions of the phrase.

As relevant here, the dictionary defines "domestic partner" as "either one of two people of the same or opposite sex who are unmarried and live together in a committed relationship especially when considered as to eligibility for spousal benefits." *Merriam-Webster Unabridged Dictionary*, http://unabridged.merriam-webster.com/unabridged/ domestic partner (accessed Apr 18, 2023). The same dictionary defines "committed relationship" as "a serious and lasting romantic relationship with someone." *Merriam-Webster Unabridged Dictionary*, http://unabridged.merriam-webster. com/unabridged/committed relationship (accessed Apr 18, 2023). Thus, under the dictionary definition, a "domestic partner" is "either one of two people of the same or opposite

sex who are unmarried and live together in [a serious and lasting romantic relationship with someone.]"

The concepts of "domestic partnership" and other "domestic" matters arise in areas of the law not directly related to this case. For example, ORS 106.310(1) defines "[d]omestic partnership" as "a civil contract described in ORS 106.300 to 106.340 entered into in person between two individuals of the same sex who are at least 18 years of age, who are otherwise capable and at least one of whom is a resident of Oregon." Oregon law also recognizes unregistered domestic partners and nonmarital domestic relationships between opposite sex couples. *See, e.g.*, *Staveland v. Fisher*, 366 Or 49, 455 P3d 510 (2019) (considering property rights in the dissolution of an unregistered nonmarital domestic partnership between two individuals of the opposite sex); *Wilbur v. DeLapp*, 119 Or App 348, 850 P2d 1151 (1993) (same).

Here, the two definitions differ in some significant respects. The dictionary definition deals with both opposite-sex and same-sex couples; the statutory definition only addresses same-sex couples. The dictionary definition requires that the couple live together; the statutory definition does not. The dictionary definition contains subjective factors about the duration and nature of the relationship; the statutory definition contains no such descriptors. There is thus not one universally agreed upon definition of "domestic partner" that we can point to.

Although it is highly unlikely that the condition was intended to apply only to same-sex partners, and thus unlikely that the probation condition tracks the definition in ORS 106.310, that does not end the vagueness inquiry. The dictionary definition still requires interpretation of the meaning of "serious" and "lasting" in terms of a "romantic relationship." In *United States v. Reeves*, 591 F3d 77, 79 (2d Cir 2010), the Second Circuit determined that the phrase "significant romantic relationship" was an unconstitutionally vague condition, because "[w]hat makes a relationship 'romantic,' let alone 'significant' in its romantic depth, can be the subject of endless debate that varies across generations, regions and genders." *Reeves*, 591 F3d at 81.

Like the condition in *Reeves*, the dictionary definition here includes terms—"serious," "lasting," and "romantic"—that "can be the subject of endless debate." Accordingly, although *Reeves* is not binding on us, we find its reasoning persuasive. We thus conclude that the dictionary definition of "domestic partner" standing on its own has a level of subjectivity that makes it unconstitutionally vague.

Adding to the vagueness of the meaning of the phrase is that ORS 135.230(3) defines "domestic violence" as "abuse between family or household members" which, under ORS 135.230(4), includes spouses, former spouses, adult persons related by blood or marriage, persons cohabiting with each other, persons who have cohabitated with each other or have been involved in a sexually intimate relationship, and unmarried parents of a minor child. Although ORS 135.230 applies to statutes that govern pretrial release, it demonstrates that "domestic" can refer to a larger range of relationships than the dictionary definition contemplates. It could be, then, that the term "any domestic partner" in the probation condition has a meaning that is something other than that provided by the dictionary.

Because the phrase "any domestic partner" is vague, we look to see if there is any context that could assist in determining its meaning. Here, the condition states in its entirety: "Disclose nature of conviction to any domestic partner." There is no "additional wording or context," *Penn*, 365 Or at 637-38, in the probation condition itself that provides any clarity about what relationships are covered. That makes this case unlike *Farris*, in which we concluded that the context surrounding the word "intimate" made it clear when the defendant would have to seek permission from his probation officer prior to starting a relationship. 312 Or App at 622.

As we have held, a condition is vague when people must guess at its meaning or when it allows arbitrary or discriminatory enforcement. *Id.* at 624. Here, both are true. There is no universally agreed upon meaning of the phrase "domestic partner." And, given the wording of the condition, there is no way to determine with the needed amount of certainty what relationships count as relationships

between "domestic partners" and thus require disclosure of defendant's convictions. That lack of certainty is the same for both people subject to the condition and people charged with enforcing compliance with it. For that reason, we disagree with the state's position that defendant could cure any vagueness problems by simply asking his probation officer for clarification. This is not a situation in which a seemingly vague phrase has an agreed upon meaning that is simply unfamiliar to the general public. Because of the lack of a singular definition for the phrase, it is possible for the condition to be enforced in an arbitrary or discriminatory manner. The probation condition that defendant "[d]isclose nature of conviction to any domestic partner" is unconstitutionally vague under the Fourteenth Amendment.

Remanded for resentencing; otherwise affirmed.

**POWERS, J.,** concurring in part, dissenting in part.

It is undisputed that the trial court told defendant in open court that it was imposing the "DV package" of probation conditions for Counts 4, 5, and 6, as part of defendant's sentence. Notwithstanding that pronouncement, the majority opinion concludes that one of those conditions, which requires defendant to "[d]isclose [the] nature of [the] conviction to any domestic partner," was imposed for the first time in the written judgment. That conclusion, in my view, gives short shrift to the court's oral pronouncement at sentencing and the important context that existed in that courtroom and in courtrooms around the state every day. Because the majority opinion does not adequately address both the written and oral circumstances surrounding the trial court's imposition of the DV package of conditions, I respectfully dissent from the majority opinion's discussion of defendant's third assignment of error. I fully join the portions of the majority opinion that (a) reject the first assignment of error challenging the trial court's ruling on the motion for judgment of acquittal, and (b) conclude that the third assignment of error is moot. Accordingly, I concur in part and dissent in part.

The circumstances leading up to the trial court entering a judgment with a condition of probation to "Disclose nature of conviction to any domestic partner" seem unremarkable and could happen in any court across Oregon. After the trial court found defendant guilty of several crimes following a bench trial, sentencing was set over for a week. When the parties returned to court, the prosecutor began the sentencing hearing by informing the court that it "handed up a UCJ [Uniform Criminal Judgment] that is the State's [sentencing] recommendation" and then turned to arguing about specific aspects of its recommendation. The UCJ referenced by the prosecutor—a portion of which is included as an appendix to this separate opinion—was a six-page recommendation that appears to be consistent with the routine practice for criminal cases in Clackamas County Circuit Court. In particular, the UCJ provided checkboxes for various packages of special conditions:

| Probation: | | | |
|---|---|---|---|
| ☐ Bench _____ Months | ☒ Substance Abuse Package (CLASUB) | | |
| ☒ Supervised 60 Months | ☐ Sex Abuse Package (CLASEX) | | |
| | ☒ DV Package (CLADOM) | | |
| ☐ Community Service _____ Hrs (CSW) | ☐ Financial Crimes Package (CLAFIN) | | |
| ☐ Theft Talk (THTL) | License: ☐ Rev/ ☐ Susp _____ | | |
| ☐ Anger Management (ACTP) | ☐ _____ (_____) | | |
| ☐ Forfeit/Destroy _____ (FRGW) | ☐ _____ (_____) | | |

Importantly, defendant acknowledged the UCJ at the sentencing hearing as part of his argument before the trial court. Defense counsel explained, "It looks like the State is not asking for any financial obligations. At least in the UCJ parts that I'm looking at, it doesn't look like they're asking for any financial obligations, and so I'm not going to address that issue." After hearing the parties' sentencing arguments, the trial court then fulfilled its obligation to pronounce judgment in open court. *See State v. Jacobs*, 200 Or App 665, 671, 117 P3d 290 (2005) (explaining that the right to be present at sentencing "has both statutory and constitutional sources"). As part of its pronouncement, the trial court told defendant what sentencing grid block it was using, the length of probation, whether it was imposing a jail sanction or reserving that for later, and what special conditions of probation it was imposing, including that it

was imposing the "DV package" for Counts 4, 5, and 6.[1] The written judgment then included the specific details to those provisions, including the special condition of probation that defendant challenges on appeal. In sum, "DV Package" was listed on the UCJ and provided to the defendant and to the court prior to sentencing. The UCJ was referenced by the prosecutor and acknowledged by defendant during sentencing, and the court made three oral pronouncements that the "DV Package" was being imposed as it sentenced defendant.

The majority opinion does not grapple with this context when it concludes that the challenged condition was imposed for the first time in the judgment. As we have previously acknowledged, "trial courts sometimes speak in shorthand at sentencing and adopt by specific reference a state's recommended sentence in a manner where the imposition of the fine or fee is apparent when viewed in context * * *." *State v. Macy*, 312 Or App 234, 237-38, 492 P3d 1277 (2021). In my view, the context here provided sufficient clarity about the sentence imposed by the trial court.

Given that context, which is undoubtedly similar to sentencing hearings across Oregon that refer to oft-used special conditions of probation, the use of the UCJ belies defendant's assertion that the challenged condition was imposed for the first time in the judgment. The UCJ is a form that includes checkboxes and blank spaces describing various parts of a defendant's sentence, including whether there is a durational or dispositional departure, the type of probation (*i.e.*, bench or supervised) and length, and checkboxes for special conditions of probation that are routinely

---

[1] More specifically, the trial court told defendant in open court:

"Count 4, misdemeanor, 60 months of probation. No contact with [the victim]. I don't know how—well, I'm not sure how you could get weapons and firearms in the penitentiary, but when [defendant] gets out, no weapons, no firearms.

"Reserve all sanction units. And DV package and substance abuse package.

"Count 5, 60 months of supervision, substance abuse package, DV package, reserve all sanction units, no contact with [the victim], no weapons and no firearms.

"And on Count 6, 60 months of supervised probation, substance abuse package, DV package, no contact with [the victim], no weapons and no firearms, reserve all sanction units."

imposed. For instance, there are checkboxes for "Community Service," "Theft Talk," and "Anger Management," as well as checkboxes for packages of special conditions such as the "Substance Abuse Package," "Financial Crimes Package," and the "DV Package." All of those checkboxes are routinely used shorthand for special conditions of probation that place various requirements on a defendant, the details of which are generally sorted out by the supervising authority.

For example, if a defendant's sentence includes 16 hours of community service, the court or the supervising authority will explain what type of community service will count toward that requirement. Similarly, if a defendant is ordered to complete "Theft Talk" or "Anger Management" as a special condition of probation, the supervising authority will explain what type of class or seminar will fulfill that sentence requirement. Although the "DV Package" includes a variety of special conditions of probation, fundamentally it is no different than imposing community service or a specific type of class like anger management.

This would be a different case if defendant's argument suggested that there was some confusion because the DV package had been recently changed to add a new special condition of probation or that the context of the trial court's reference to the "DV package" created some confusion because it was not part of the routine criminal practice in the circuit court. Here, however, defendant does not advance such an argument and, indeed, the majority opinion gives no effect to the trial court's pronouncement of the "DV package" at all. That is problematic in my view, especially given the parties' discussion of the UCJ at the sentencing hearing, which included references to the DV package. Although we must be sensitive to confusion that can arise from the use of shorthand or abbreviated phrases, this is not a situation where we should excuse defendant from raising his challenge when the trial court fulfilled its obligation to announce what special conditions of probation applied to defendant's probation. Accordingly, I would reject defendant's assertion on appeal that he is excused from the preservation requirement. Indeed, adherence to preservation principles would have given the trial court and the parties an opportunity to address defendant's underlying complaint that the special

condition of probation is too vague for him to understand and follow. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that the prudential requirement of preservation serves several purposes, including providing the trial court the chance to consider and rule on an issue, ensuring fairness to the opposing party by giving that party an opportunity to respond, and fostering full development of the record).

Finally, I also dissent from the majority opinion's decision to address the merits of defendant's challenge. Had defendant raised his objection, the parties could have made a record on whether the term "any domestic partner" is constitutionally vague, and the trial court could have provided clarity on the meaning of that term. To me, that is no different than a defendant asking whether volunteer service at a church or place of worship would qualify as community service or whether a particular online class fulfills the anger management special condition of probation. Thus, at the very least, we should remand the case back to the trial court to address the constitutional argument in the first instance, as we have done in other situations where we concluded that the challenged condition was imposed for the first time in the judgment. *See, e.g.*, *State v. Keen*, 304 Or App 89, 90, 466 P3d 95 (2020) (remanding for resentencing when special probation conditions were not announced in open court and noting that on remand "the parties may raise, and the court may address," the merits of the defendant's argument). *See also* ORS 138.257(4)(a)(B) ("The appellate court shall remand the case to the trial court *** [i]f the appellate court determines that the trial court, in imposing or failing to impose a sentence in the case, committed an error that requires resentencing.").

For the foregoing reasons, I would give meaning to the trial court's pronouncement of the "DV package" of special conditions and reject defendant's contention that the challenged condition was imposed for the first time in the judgment. Further, even assuming that the challenged condition was imposed for the first time in the judgment, I would remand the case to the trial court instead of addressing the merits of defendant's challenge. In my view, our unwillingness to recognize the context of the trial court's sentencing

hearing undercuts preservation principles and could make sentencing proceedings unnecessarily cumbersome.

Accordingly, I respectfully concur in part, dissent in part.

## APPENDIX

STATE v. Priester, Kyrii        CASE #: 19CR41155

COUNT #: 4    CRIME: Assault 4 (DV)

Gridblock: _____    Special Factors:  ☐ ORS 137.717 (REPO)   ☐ ORS 137.700 (M11)
☐ ORS 161.610 (Firearm)  ☐ ORS_____

Departure:  Durational  ☐Up  ☐Down  Dispositional  ☐Up  ☐Down  ☐Stipulated

Substantial & Compelling Reasons:_____

| Probation: | |
|---|---|
| ☐ Bench _____ Months | ☒ Substance Abuse Package  (CLASUB) |
| | ☐ Sex Abuse Package  (CLASEX) |
| ☒ Supervised 60 Months | ☒ DV Package  (CLADOM) |
| | ☐ Financial Crimes Package (CLAFIN) |

☐ Community Service _____ Hrs (CSW)

☐ Theft Talk (THTL)

☐ Anger Management  (ACTP)

☐ Forfeit/Destroy _____ (FRGW)

License: ☐ Rev/ ☐ Susp _____
☐ _____  (_____)
☐ _____  (_____)

☒ No contact with:  No contact with ██████████

Additional Conditions:  No weapons or firearms

☒ Jail: Reserve _____  ☐Prison:_____  ☐PPS:_____
☐Concurrent w/: _____  ☐Consecutive to: _____
Alternative Sanctions:  ☐ Eligible    ☐ Not Eligible    ☐ No EHD/RMOMS
Good Time/Earned Time Credit:  ☐ Eligible    ☐ Not Eligible
☐CTS    ☐No CTS    ☐CTS from most recent arrest
☐ Executed Jail Sentence

| | | | |
|---|---|---|---|
| ☐Fine/Fee: | $ _____ | ☐Restitution ☐Comp Fine: $ _____ | |
| ☐Attorney Fees: | $ _____ | Name: _____ | |
| ☐Unitary: | $ 60 | | |
| ☐Bench Probation Fee: | $ 100 | ☐J/S w/case #: _____ | |
| ☐DUII Conviction Fee: | $ 255 | ☐Agree to leave restitution open for 90 days | |

Dismissed: ☐Count(s)_____  ☐Case(s): _____

PAGE 4 of _____

Distribution:  White/Court  Yellow/UCJ Clerk  Pink/DA  Goldenrod/Defense
Revised 04/20/2016

STATE v. Priester, Kyrii        CASE #: 19CR41155

COUNT #: 5    CRIME: Menacing (DV)

Gridblock: _____    Special Factors: ☐ ORS 137.717 (REPO)   ☐ ORS 137.700 (M11)
                                              ☐ ORS 161.610 (Firearm) ☐ ORS_____

Departure: <u>Durational</u> ☐Up ☐Down <u>Dispositional</u> ☐Up ☐Down ☐Stipulated

Substantial & Compelling Reasons:_____

| Probation: | ☒ Substance Abuse Package (CLASUB) |
|---|---|
| ☐Bench _____ Months | ☐ Sex Abuse Package (CLASEX) |
| ☒Supervised _60_ Months | ☒ DV Package (CLADOM) |
| | ☐ Financial Crimes Package (CLAFIN) |

| ☐ Community Service _____ Hrs (CSW) | License: ☐ Rev/ ☐ Susp _____ |
|---|---|
| ☐ Theft Talk (THTL) | ☐ _____  (_____) |
| ☐ Anger Management (ACTP) | ☐ _____  (_____) |
| ☐ Forfeit/Destroy _____ (FRGW) | |

☒ No contact with: ████████████████████

Additional Conditions: No weapons or firearms

☒Jail: Reserve _____ ☐Prison:_____ ☐PPS:_____
☐Concurrent w/: _____ ☐Consecutive to:_____
Alternative Sanctions: ☐ Eligible   ☐ Not Eligible   ☐ No EHD/RMOMS
Good Time/Earned Time Credit: ☐ Eligible   ☐ Not Eligible
☐CTS   ☐No CTS   ☐CTS from most recent arrest
☐ Executed Jail Sentence

| ☐Fine/Fee: | $ _____ | ☐Restitution ☐Comp Fine: $ _____ |
|---|---|---|
| ☐Attorney Fees: | $ _____ | Name: _____ |
| ☐Unitary: | $ 60 | ☐J/S w/case #: _____ |
| ☐Bench Probation Fee: | $ 100 | |
| ☐DUII Conviction Fee: | $ 255 | ☐Agree to leave restitution open for 90 days |

Dismissed: ☐Count(s)_____   ☐Case(s): _____

Distribution: White/Court  Yellow/UCJ Clerk  Pink/DA  Goldenrod/Defense
Revised 04/20/2016

STATE v. Priester, Kyrii          CASE #: 19CR41155

COUNT #: 6    CRIME: Harassment

Gridblock: _____   Special Factors: ☐ ORS 137.717 (REPO)   ☐ ORS 137.700 (M11)
                                          ☐ ORS 161.610 (Firearm) ☐ ORS_____

Departure: **Durational** ☐Up ☐Down **Dispositional** ☐Up ☐Down ☐Stipulated

Substantial & Compelling Reasons:_____

| Probation: | ☒ Substance Abuse Package (CLASUB) |
|---|---|
| ☐Bench _____ Months | ☐ Sex Abuse Package (CLASEX) |
| ☒Supervised 60 Months | ☒DV Package (CLADOM) |
| | ☐ Financial Crimes Package (CLAFIN) |

☐ Community Service _____ Hrs (CSW)

☐ Theft Talk (THTL)

☐ Anger Management (ACTP)

☐ Forfeit/Destroy _____ (FRGW)

License: ☐ Rev/ ☐ Susp _____
☐ _____ (_____)
☐ _____ (_____)

☒ No contact with:_ █████████████ _____

Additional Conditions: No weapons or firearms

☐Jail: _____  ☐Prison:_____  ☐PPS:_____
☐Concurrent w/: _____  ☐Consecutive to: _____
Alternative Sanctions: ☐ Eligible   ☐ Not Eligible   ☐ No EHD/RMOMS
Good Time/Earned Time Credit:   ☐ Eligible   ☐ Not Eligible
☐CTS   ☐No CTS   ☐CTS from most recent arrest
☐ Executed Jail Sentence

| ☐Fine/Fee: | $ _____ | ☐Restitution ☐Comp Fine: $ _____ |
|---|---|---|
| ☐Attorney Fees: | $ _____ | Name: _____ |
| ☐Unitary: | $ 60 | |
| ☐Bench Probation Fee: | $ 100 | ☐J/S w/case #: _____ |
| ☐DUII Conviction Fee: | $ 255 | ☐Agree to leave restitution open for 90 days |

Dismissed: ☐Count(s) _____   ☐Case(s): _____

PAGE 6 of 6