No. 117 February 19, 2026 297

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MIGUEL ANGEL DIAZ-BRICENO,
*Defendant-Appellant.*

Marion County Circuit Court
20CR55673; A179282

Tracy A. Prall, Judge.

Submitted July 25, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Francis C. Gieringer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

O'CONNOR, J.

Remanded for resentencing; otherwise affirmed.

_____
 * O'Connor, Judge *vice* Mooney, Senior Judge.

**O'CONNOR, J.**

Defendant appeals from a judgment of conviction and sentence for one count of second-degree sexual abuse, ORS 163.425, and one count of third-degree sexual abuse, ORS 163.415. Defendant raises eight assignments of error.

In his first five assignments of error, defendant argues that the prosecutor made improper comments during closing and rebuttal arguments that deprived defendant of a fair trial. We conclude that the prosecutor's comments did not deprive defendant of a fair trial. In his sixth assignment of error, defendant argues that the trial court plainly erred by failing to provide a concurrence instruction to the jury for the third-degree sexual abuse count. We conclude that the trial court's failure to provide a concurrence instruction was not plain error. Accordingly, we affirm the first through sixth assignments of error.

In his seventh and eighth assignments, defendant argues that the trial court plainly erred when it imposed two special probation conditions: one requiring defendant to disclose his sexual offense history to anyone with whom he had a "close affiliation" or "significant relationship" and the other prohibiting defendant from accessing the internet without first obtaining written permission from his probation officer or therapist. We conclude that the trial court plainly erred when it imposed those conditions. The condition requiring defendant to disclose any "close affiliation," or "significant relationship" is unconstitutionally vague under the Due Process Clause of the United States Constitution, and the condition prohibiting defendant from accessing the internet without permission is not "reasonably related to the crime of conviction" as required by ORS 137.540(2).[1] Accordingly, we remand for resentencing and otherwise affirm.

## I.  BACKGROUND

We provide a brief overview of the facts and provide more detailed facts relevant to each assignment of error in

---

[1] ORS 137.540(2) provides, in part:

"In addition to the general conditions, the court may impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both[.]"

our analysis below. Defendant was charged with one count of second-degree sexual abuse (Count 1) and one count of third-degree sexual abuse (Count 2) based on an incident at his home involving a neighbor, B, who was 14 years old. The case was tried to a jury, and the jury found defendant guilty as charged.

The trial court imposed 60 months of probation on Count 1 and 24 months of probation on Count 2. The court imposed the two probation conditions that defendant challenges in the seventh and eighth assignments of error as special conditions of probation under ORS 137.540(2).

## II.   ANALYSIS

### A.   *Prosecutor's Statements*

In his first five assignments of error, defendant argues that the prosecutor made improper comments during closing and rebuttal arguments that deprived defendant of a fair trial under *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022). Defendant's first, second, fourth, and fifth asserted errors are unpreserved and we review them for plain error. *Id.* at 311. Improper comments made by a prosecutor during closing argument constitute plain error "where it would have been an abuse of discretion for the trial court to have denied a motion for mistrial, because 'it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied [the] defendant a fair trial.'" *State v. Settlemier*, 333 Or App 179, 180, 551 P3d 995 (2024), *rev den*, 373 Or 212 (2025) (brackets in original) (quoting *Chitwood*, 370 Or at 321).

Defendant preserved his third assignment of error. When a defendant preserves a challenge to a trial court's denial of a motion for mistrial based on a prosecutor's comments during closing argument of a jury trial, a defendant "must show not only that the prosecutor's comments were 'improper,' but also that they were 'so prejudicial as to have denied the defendant a fair trial.'" *State v. Perez*, 373 Or 591, 593, 568 P3d 940 (2025) (quoting *Chitwood*, 370 Or at 312) (internal brackets omitted). That is, the analysis of the merits of the claim of error is the same as the merits analysis in a plain-error argument under *Chitwood*.

1. *Closing argument*

B testified at trial. She was almost 16 years old at the time of her trial testimony. In his first assignment of error, defendant challenges the following statement made by the prosecutor in closing argument:

"I heard the same testimony that you heard and I know that it is a challenging job that you have when you go back to that jury room because you saw [B] 16, almost 16 now, 16 *in I think about eight days now, tell you at some point on cross-examination after about an hour or so of pretty relentless cross-examination finally just agree with the Defense attorney* 'Yeah, I don't remember anything.' Right? She finally just said 'I don't remember anything.' And one of the things that you have to do, jurors, is ask yourself what you think about that. What do you think about a child who's 16, two years after the fact this happened, *who has sat on the stand for most of the afternoon and who was subjected to a very professional attorney* [sic] exactly *what he's doing because he's very good at his job, just hammer away at her;* I am not casting aspersions on [defense counsel], he did a very good job, that is what he [is] supposed to do. ***. And think about the fact that she's a 16-, almost 16-year-old girl *sitting in front of a bunch of strangers and the person who did it to her and a very skilled attorney who is telling her that she just forgets, right, aren't you just getting it all wrong?*"

(Emphases added.) Relying on *State v. Brunnemer*, 287 Or App 182, 401 P3d 1226 (2017), defendant argues that the comment was improper because the prosecutor commented on defendant's trial rights and that the comment risked inflaming the jury against defendant and defense counsel by implicitly suggesting that defendant was revictimizing B.

In *Brunnemer*, the prosecutor in rebuttal closing argument told the jury that defense attorneys in general "pummel[]" victims in cross-examination and tell juries that victims are "dishonest" and "making [things] up." *Id.* at 185. The prosecutor then told the jury that the defense was "not asking for justice." Defense counsel objected and moved for a mistrial. The trial court denied the motion. We reversed, concluding that in the context of the prosecutor's entire rebuttal argument, "the prosecutor's statement that

the defense was 'not asking for justice' *** improperly urged the jury to find [the] defendant guilty based, not exclusively on the strength of the state's evidence, but on a desire to punish defense counsel for [the complainant's] treatment at trial." *Id*. at 188.

In this case, some of the prosecutor's statements were close to crossing the line into impermissible argument. In particular, the prosecutor's characterization of defense counsel as "just hammer[ing] away at" B on cross-examination and the statement that B is an "almost 16-year-old girl sitting in front of a bunch of strangers and the person who did it to her and a very skilled attorney who is telling her that she just forgets, right, aren't you just getting it all wrong?" could, in isolation, be viewed as improperly urging the jury to punish defense counsel and defendant for defendant's exercise of his constitutional rights to trial and confrontation. That would be impermissible, as we explained in *Brunnemer*. But the prosecutor's comments, in context, did not cross the line into impermissible argument. In the context of the entire closing argument, the prosecutor's argument permissibly asked the jury to find B credible based on statements she made closer to the time of the incident, despite inconsistencies in her testimony on cross-examination, because those inconsistencies resulted from confusion or fatigue after a lengthy cross-examination. *See Perez*, 373 Or at 618-19 (Bushong, J., concurring) ("[I]n a criminal case that may turn on the credibility of one or more witnesses, a prosecutor can always argue that the jury should find the testimony of the state's witnesses to be more credible than the testimony of the defense witnesses."). Accordingly, the comments were not improper and did not deny defendant a fair trial.

2. *Rebuttal argument*

Defendant identifies three statements that the prosecutor made during rebuttal closing argument that, in his view, were improper. First, in discussing statements B made during her testimony, the prosecutor made the following comment: "I just wrote down a few that I—that caught my ear, can help you sort of sound like to me, maybe you heard some more, sound like things that just ring true." Second,

during B's testimony, she stated that she "didn't want to get [defendant] in trouble," in response to a question asking about her inconsistent statements. In rebuttal, the prosecutor made the following statement to the jury, referring to B's statement: "I didn't want to get him in trouble. Does that sound like something that a child would say who is trying to get someone in trouble, who is making up a story[?]" Third, the prosecutor told the jury:

> "I would also question, ask you to question whether a child who is wholeheartedly making up out of whole cloth as the defendant wants you to believe, completely making this up, would make up something that doesn't just go all the way. If you're going to lie about sexual assault, why not say it went all the way? If for instance, you don't know that the person you're lying about suffers from apparent sexual dysfunction, why not say he raped you?"

Defendant argues that those statements were improper because the prosecutor opined on B's credibility. The state responds that the statements were permissible in context because the prosecutor was summarizing statements made by B and arguing that the jury should find her credible.

We conclude that the statements were either not improper, or even if improper, were not so prejudicial as to deny defendant a fair trial. The prosecutor's comment that B's testimony "rings true" was not improper. Viewed in context, the prosecution was pointing to specific statements in evidence made by B and attempting to persuade the jury to rely on those statements to find B credible. *See State v. Putnam*, 340 Or App 61, 64, 569 P3d 1014, *rev den*, 374 Or 188 (2025) (a prosecutor may argue to a jury that a victim is credible based the victim's testimony and other evidence). For the same reason, the prosecutor's statement that B's testimony didn't "sound like something that a child would say who is trying to get someone in trouble," was not improper.

The third statement also did not impermissibly vouch for B's credibility. Even assuming that the prosecutor impermissibly relied on facts not in evidence when they argued that a child who fabricates an allegation of sexual

abuse would accuse a defendant of rape, we conclude that the improper comment did not deny defendant a fair trial.

"Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct." *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009). The trial court instructed the jury regarding its role in determining the facts and also that the lawyer's statements and arguments were not evidence. The prosecutor's argument that a child who fabricates an allegation of sexual abuse would accuse a defendant of rape, while clumsy, was not unfairly inflammatory and it was a single passing comment during argument. Additionally, if defendant had objected, the trial court could have stricken the improper statement and provided a curative instruction. *See Putnam*, 340 Or App at 66 (so concluding regarding several improper statements by a prosecutor). Thus, even if there was error, it did not deny defendant a fair trial.

In his fifth assignment of error, defendant argues that even if the comments individually did not deny defendant his right to a fair trial, cumulatively they did so. Because we conclude that three of the four statements were not improper and all of the prosecutor's statements identified by defendant related to the same subject—B's credibility—we conclude that they did not have a cumulative effect to be so prejudicial to defendant as to deny him a fair trial. *Cf. State v. Clark*, 341 Or App 54, 61, 572 P3d 323 (2025) (evaluating the cumulative effect of statements that we concluded were improper). Accordingly, we conclude that the trial court did not err.

B.  *Jury Instruction*

In his sixth assignment of error, defendant argues that the trial court plainly erred by failing to give the jury a concurrence instruction regarding the third-degree sexual abuse charge. "To constitute plain error, the error must (1) be one of law; (2) be apparent, obvious, or not reasonably in dispute; and (3) 'appear on *** the record[.]'" *State v. Slaviak*, 296 Or App 805, 810, 440 P3d 114 (2019) (quoting *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991)) (ellipsis in *Slaviak*; brackets added). Whether a trial court erred when it did not give a jury concurrence

instruction is a legal question that we review for legal error. *State v. Teagues*, 281 Or App 182, 187, 383 P3d 320 (2016). We view the evidence in support of the instruction in the light most favorable to defendant. *Id*. We conclude that any error here is not apparent or obvious.

For a valid guilty verdict, Article I, section 11, of the Oregon Constitution requires the requisite number of jurors—in this case 12—to "agree that the state has proved each legislatively defined element of a crime." *State v. Pipkin*, 354 Or 513, 527, 316 P3d 255 (2013). Thus, "when an indictment charges a single offense, but the evidence permits the jury to find any one or more among multiple, separate occurrences of that offense involving the same victim and the same perpetrator if the state has not elected which occurrence constitutes the crime," a court must provide a jury concurrence instruction. *Slaviak*, 296 Or App at 806 (internal quotation marks and brackets omitted). A concurrence instruction tells "the jury that the requisite number of jurors must agree on one of the multiple occurrences." *Teagues*, 281 Or App at 189 (citing *State v. Ashkins*, 357 Or 642, 659, 357 P3d 490 (2015)).

To evaluate defendant's argument, "we begin by examining the charging instrument and the elements of the crime." *State v. Camphouse*, 313 Or App 109, 113-14, 491 P3d 94, *adh'd to as modified on recons*, 316 Or App 278, 501 P3d 103 (2021), *rev den*, 369 Or 675 (2022). The indictment charged defendant with two counts.

Count 1 alleged that defendant committed the crime of sexual abuse in the second degree, ORS 163.425, on August 12, 2020, by "knowingly subject[ing] [B] to" sexual intercourse, "the said [B] not consenting thereto." A person is guilty of that theory of second-degree sexual abuse when "[t]he person subjects another person to sexual intercourse *** and the victim does not consent thereto[.]" ORS 163.425(1)(a). "'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight; emission is not required." ORS 163.305(6).

Count 2 alleged that defendant committed the crime of sexual abuse in the third degree, ORS 163.415, on

August 12, 2020, by "knowingly subject[ing] [B], a person under the age of 18 years, to sexual contact by touching her vagina, a sexual or intimate part of [B]." A person commits that theory of third-degree sexual abuse when "[t]he person subjects another person to sexual contact and * * * [t]he victim is incapable of consent by reason of being under 18 years of age[.]" ORS 163.415(1)(a)(B). "'Sexual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(5).

Based on the evidence, the jury instructions, and the parties' arguments, the jury would have understood that the charge of second-degree sexual abuse relied on the state's evidence that defendant attempted to penetrate B's vagina with his penis but was only able to penetrate her external genitalia. The jury would also have understood that the charge of third-degree sexual abuse relied on the state's evidence that defendant put his fingers in B's vagina in his living room. B made two out-of-court statements, one to her mother and one to police officers, that defendant put his fingers in her vagina and then tried to penetrate her with his penis, all on the bed. B made one out-of-court statement, to a Liberty House assessor, that defendant put his finger in her vagina while on the couch, then threw her on the bed and tried to penetrate her with his penis. At trial, B testified that defendant did not touch her sexually while they were on the couch and that while on the bed defendant put his fingers in her vagina and tried to penetrate her vagina with his penis. That is, the state's evidence presented the jury with a single incident of penetration with defendant's fingers and single incident of penetration with defendant's penis during on ongoing course of sexual conduct. Defendant testified in his own defense and denied that the abuse occurred.

"Ensuring jury concurrence requires a charge from the court—arguments by the parties are typically insufficient to properly charge the jury." *State v. Burris*, 301 Or App 430, 433, 456 P3d 684 (2019). With that in mind, it nonetheless bears noting that in this case the parties' arguments

did not suggest that the jury had before it multiple instances that could constitute third-degree sexual abuse. The state did not argue in closing that defendant put his fingers in the victim's vagina more than once, consistent with the state's evidence. Defendant argued that the sexual abuse had not occurred at all, consistent with the defense evidence. The trial court instructed the jury consistent with the allegations in the indictment and the statutory definitions of the crimes.

Thus, the jury was not presented with multiple factual occurrences that could constitute third-degree sexual abuse, at least not obviously so. For that reason, the trial court did not plainly err when it did not give a concurrence instruction. *See State v. Arrellano-Sanchez*, 309 Or App 72, 86, 481 P3d 349, *rev den*, 368 Or 511 (2021) (concluding that a concurrence instruction was not required because "based on th[e] record, we [did] not perceive that the jury would be confused, or in potential disagreement, as to what defendant did").

C.   *Probation Conditions*

Defendant challenges two of the probation conditions imposed by the trial court as special conditions of probation. A "court may impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both[.]" ORS 137.540(2).

The first challenged condition (the disclosure condition) requires defendant to "[i]nform all persons with whom defendant has had a significant relationship or close affiliation of his/her sexual offending history. Such relationships must be approved by his/her Probation Officer or Therapist." The second challenged condition (the internet condition) instructs that defendant may "not access the internet without prior written permission of Probation Officer or Therapist." Defendant argues that the disclosure condition is unconstitutionally vague under the Due Process Clause of the United States Constitution. Defendant argues that the internet condition is not "reasonably related to the crime of conviction or the needs of the probationer for the protection

of the public," as required by ORS 137.540(2), because defendant's crimes of conviction did not involve the internet and the state did not present evidence at sentencing of any internet use. Defendant did not object to the imposition of the conditions, and thus those arguments are not preserved. Defendant requests plain error review.

The state, in response, does not defend the trial court's imposition of the conditions on the merits. The state argues that we should decline to exercise our discretion to correct any plain error. The trial court sentenced defendant to probation on both counts and imposed the challenged special conditions as part of a sex offender package. The state argues that defendant might have made a strategic decision not to object to the conditions because he might have concluded that objecting to the conditions would have caused the trial court to impose a jail sentence instead of probation. The state also argues that we should not exercise our discretion to correct any plain error because an objection would have permitted the state to respond and the trial court could have easily corrected the error.

"Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). However, we have discretion to correct a "plain" error. ORAP 5.45(1). As stated above, "[a]n error is 'plain' when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences." *State v. Durant*, 327 Or App 363, 364, 535 P3d 808 (2023), *rev den*, 374 Or 143 (2025) (citing *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013)). We review the court's imposition of probation conditions for errors of law. *State v. Borders*, 293 Or App 791, 793, 429 P3d 1067 (2018).

1.   *The disclosure condition*

"'A statute or probation condition is vague under the Due Process Clause if it contains a lack of notice so that [people] of common intelligence must necessarily guess at its meaning,' or so that it 'allows those who enforce it to do so in an arbitrary or discriminatory manner.'" *State v. Priester*,

325 Or App 574, 587, 530 P3d 118, *rev den*, 371 Or 332 (2023) (quoting *State v. Farris*, 312 Or App 618, 624, 492 P3d 744 (2021) (brackets in *Priester*).

We follow a step-by-step analysis to determine whether a condition of probation is unconstitutionally vague. First, we determine "whether a definition has been provided to explain its use * * *." *Priester*, 325 Or App at 585-86. "Then, we look to any available definitions of the term including dictionary and legal definitions to determine its ordinary or legal meaning." *Id*. at 586. If the phrase remains vague, we look to the "context to determine whether the remaining text of the probation condition at issue will provide sufficient clarification to put a person of common intelligence on notice of its meaning." *Id*. (internal quotation marks omitted).

In *Priester*, we concluded that a probation condition that required the defendant to "disclose the nature of his conviction to *any domestic partner*" was unconstitutionally vague. *Id*. at 578 (emphasis added). The phrase "domestic partner" was not defined in the judgment or probation statutes. Defining "domestic partner" using its ordinary meaning, we concluded that the phrase was susceptible to many different interpretations without a "way to determine with the needed amount of clarity what relationships count as relationships between 'domestic partners' and thus requires disclosure of defendant's convictions." *Id*. at 588-89. Therefore, we held that that disclosure condition was unconstitutionally vague.

Defendant argues that, like the phrase "domestic partner" at issue in *Priester*, the phrases "significant relationship" and "close affiliation" in defendant's disclosure condition are unconstitutionally vague. We agree.

First, "significant relationship" and "close affiliation" are not defined in the judgment and the terms are not in ORS 137.540, the statute governing conditions of probation. Second, there is no agreed upon definition of the phrases. The definition for "significant" includes "having meaning." *Webster's Third New Int'l Dictionary* 2116 (unabridged ed 2002). "Relationship" is defined as "the state or character of being related or interrelated: a connection by

way of relation[.]" *Id*. at 1916. Thus, a "significant relationship" could be any relation or connection that has meaning to defendant. Additionally, "close" is defined as " in proximity of space or time" and "affiliation" is defined as "the act of affiliating[.]" *Id*. at 35, 426-27. Like "significant relationship," "close affiliation" includes an indefinite number of relationships, which are almost impossible to identify based on the phrase alone. Thus, like the phrase "domestic partner" in *Priester*, the phrases "significant relationship" and "close affiliation" fail to place defendant or his probation officer on notice of when the disclosure condition would apply.

Therefore, the disclosure condition requiring defendant to "[i]nform all persons with whom defendant has had a significant relationship or close affiliation of his/her sexual offending history," and requiring that "[s]uch relationships must be approved by his/her Probation Officer or Therapist," is unconstitutionally vague.

Additionally, the error is plain because the probation condition is on the record, and under *Priester*, it is obvious and beyond reasonable dispute that when a probation condition requires a defendant to disclose his "significant relationship[s]" or "close affiliation[s]" without defining those terms, that condition is unconstitutionally vague.

2.   *The internet condition*

We next turn to the special probation condition that prohibits defendant from "access[ing] the internet without prior written permission of Probation Officer or Therapist." The imposition of special conditions of probation must be "reasonably related to the crime of conviction or the needs of the probationer for the protection of the public ***[.]" ORS 137.540(2). "[W]e have held that probation conditions were invalid when they bore 'no connection' to the defendant's conduct." *State v. Maack*, 270 Or App 400, 410-11, 348 P3d 265, *rev den*, 357 Or 743 (2015) (quoting *State v. Qualey*, 138 Or App 74, 78, 906 P2d 835 (1995)).

Defendant argues that the internet condition bears no relation to defendant's crimes, his rehabilitation, or the safety of the community, because defendant's crimes of conviction did not involve the internet and the state presented

no evidence at sentencing that defendant had attempted to contact anyone through the internet. The state does not dispute that use of the internet was not involved in defendant's crimes of conviction.

We have held that there was a connection between a probation condition banning internet use and a defendant's conduct when the defendant had a history of using the internet to violate other probation conditions prohibiting the defendant from viewing pornography or contacting minors. *See Maack*, 270 Or App at 412-13; *see also State v. Gallo*, 275 Or App 868, 872-73, 365 P3d 1154 (2015) (concluding that based on the facts that the defendant used the internet to pose as a teenager and communicate to arrange a meeting with the victim, the trial court did not err in imposing an internet ban). Here, the facts and evidence supporting the crimes of conviction did not involve any use of the internet. Thus, we conclude that the internet condition does not "reasonably relate[] to the crime of conviction or the needs of the probationer for the protection of the public," as required by ORS 137.540(2), and the trial court erred when it imposed the condition at sentencing.

Additionally, the error is plain. First, the probation condition is on the record. Second, under our existing case law discussed above and the evidence in the record, it is obvious and beyond reasonable dispute that because defendant's crimes of conviction did not involve the internet and the state did not present evidence of defendant's use of the internet, the probation condition prohibiting defendant from accessing the internet without prior permission is not "reasonably related to the crime of conviction or the needs of the probationer for the protection of the public ***[.]" ORS 137.540(2).

3. *Exercising discretion to review*

We exercise our discretion to correct the plain errors regarding the special probation conditions because the trial court did not have a lawful basis on which to impose the conditions, and the conditions implicate defendant's due process rights and access to the internet. *See State v. Gailey*, 317 Or App 285, 287, 503 P3d 1290, *rev dismissed*, 369 Or 785, 511

P3d 397 (2022) (exercising discretion to correct plain error in imposing a probation condition "because the trial court did not have a lawful basis on which to impose the condition and it implicat[ed] defendant's fundamental rights"). The errors are grave because they impose significant restrictions on defendant's liberty to engage in personal relationships and his ability to meaningfully participate in modern life by accessing the internet.

We disagree with the state's argument that we should not exercise our discretion to correct the errors because defendant might have had a strategic reason not to object—namely that the trial court might have imposed a jail sentence instead of probation simply because defendant objected. We will not premise our discretionary decision on speculation that a trial court might punish a defendant for raising an objection—in this case, a meritorious objection—at sentencing, and we have no reason to think that the trial court in this case would have done so.

We recognize that the lack of an objection from defendant prevented the trial court from explaining its reason for imposing the special conditions and prevented the state from taking a position on whether the conditions were appropriate. Those considerations weigh against our exercise of discretion. *See State v. Worthey*, 302 Or App 140, 142-43, 460 P3d 545 (2020) (declining to exercise our discretion to correct plainly erroneous alcohol-related condition of probation when the record contained some evidence that alcohol might have impacted the defendant's mental illness and the state and the court might have developed that evidence more completely if the defendant had objected). In this case, those considerations do not weigh heavily against the exercise of our discretion. Those factors are present each time we review special conditions of probation as plain error. We have nonetheless exercised our discretion to correct a plainly erroneous special condition of probation. *See, e.g.*, *State v. Hullinger*, 301 Or App 746, 747, 456 P3d 383 (2020) (exercising discretion to correct alcohol-related special conditions of probation). For the internet condition, there is no evidence to suggest that the state or the court could have developed a more complete record that would have justified the internet

condition. In *Worthey*, the record contained some evidence that alcohol use had adversely impacted the defendant's mental health, which implied that the state and the court could have made a more robust record if the defendant had objected. Here, the record lacks such evidence about defendant's use of the internet. The disclosure condition is unconstitutionally vague, and we do not see how additional record development would cure the unconstitutional vagueness. The trial court might have corrected the vagueness issues if defendant had objected. That factor also weighs against exercising our discretion.

Considering the case and record as a whole, we conclude that the ends of justice in this case justify correcting the errors for the reasons explained above. We thus remand for the trial court to remove the two erroneously imposed special conditions.

Remanded for resentencing; otherwise affirmed.